In the Matter of the ESTATE OF JOSEPH R. MEEKER;
JOHN N. STRAAT, Administrator, Appellant, v.
WILLIAM H. SWIFT, Exceptor, Respondent.

St. Louis Court of Appeals, May 5, 1891.

1.  Administration: LAW AND EQUITY. The trial of objections to
    items of the final settlement of an administrator is governed by
    the rules of chancery and not by the procedure at common law,
    and questions of fact are, therefore, open to review by this court
    upon appeal thereto.

2.  ———— : CHATTEL MORTGAGE. Personalty belonging to the estate
    of a decedent was subject to two chattel mortgages, but neither
    mortgage debt was allowed against his estate. The one mortgage
    and the debt secured by it were purchased by the widow of the
    decedent through the administrator, who advanced the money for
    the purchase; as to the other mortgage and debt, there was an agree-
    ment between the mortgagee and the administrator that the latter
    should sell the property at private sale and pay the debt out of the
    proceeds, which was to the advantage of the estate, and was done.
    The administrator on final settlement charged himself with the
    entire proceeds of the sale. Held that he was entitled on such
    settlement to credit for the amount paid in satisfaction of the
    latter debt, but not for the amount of the debt acquired by the
    widow.

3.  ———— : FINAL SETTLEMENT : ALLOWANCE FOR LEGAL SERVICES. The
    final settlement of an administrator was contested. Some of the
    objections thereto were sustained and others were disallowed.
    Held that the administrator was entitled to have a reasonable
    allowance or credit for attorney's fees for the defense of his final
    settlement.

4.  Practice, Appellate : SECOND APPEAL : RES ADJUDICATA. A pro-
    ceeding in equity relating to the administration of the estate of a
    decedent was dismissed by this court on the grounds that it was
    collusive and that the facts alleged in the petition had not been
    established, but this court in its opinion suggested that the equities
    of the parties under the facts shown could be worked out upon
    the final settlement of the estate in the probate court, and the
    course suggested was taken. Held by the court, upon appeal from
    such final settlement, that this court had in the former proceeding
    ( 38 Mo. App. 239 ) made no finding of facts except in so far as was
    necessary to the disposition of the case then before it, and that, to

that extent only were the facts not subject to review in the sub-sequent proceeding. But *held* by THOMPSON, J. (*dissenting*), that the language used by this court on the first appeal was the delib-erate expression of the opinion of the court as affecting the rights of the parties, all of whom were then before the court, and should be treated as conclusive in the subsequent proceeding especially since this was necessary to prevent injustice.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED (*with directions*).

*John A. Gilliam*, for appellant.

*Hiram J. Grover*, for respondent.

BIGGS, J.—The main facts that gave rise to the present controversy were before this court on a former occasion in the case of *Meeker v. Straat*, Swift, inter-pleader, 38 Mo. App. 239. As the principal contention on the present appeal is that the trial court erred in not treating the *former* decision of this court as conclusive of the facts litigated in the present proceeding, we briefly state the character of the two actions, and the positions respectively occupied by the parties in the former proceeding in order to show how the question arises for decision. The first action was one in equity, and was prosecuted by Mrs. Meeker against the admin-istrator of her husband's estate for the purpose of obtaining a decree, that she was entitled to be paid out of the assets of the estate the amount of two notes, secured by mortgage on personal property converted by the administrator, in preference to the interpleader who is a judgment creditor of the estate. Her claim then was that she had bought and held these notes and mortgages, when the sale took place. Mrs. Meeker was, and is, the sole distributee, and Swift was, and is, the sole creditor, and there are no other parties interested in the estate. In the former action Swift intervened,

and denied all the allegations of the petition, except that the defendant administrator had sold the personal property. His answer further stated that there was no equity in the bill, and that the plaintiff had an adequate remedy at law.

We denied the relief prayed for by Mrs. Meeker in the former proceeding on the ground, among others, that the suit was not an adversary but a collusive suit for the purpose of establishing a decree binding on the third party, and that the allegations of Mrs. Meeker's bill were not unproved in some particular or particulars only, but in their entire scope and meaning. We held that under the uncontroverted facts she was not entitled to any relief under the bill, and we reversed the judgment of the trial court, which was in her favor, and dismissed her bill.

It will be thus seen that the record of the former case presented the following points for our consideration : Were the allegations in the bill true, and, if so, do they entitle the plaintiff to the relief prayed for? Upon the facts appearing in the record then before us, we negatived both these propositions, and in the course of our argument used the following language: "The administrator in this case, with the best motives it is true, having paid out funds of the estate in his hands for these mortgages, and finding himself involved in difficulties, owing to the discovery of other preferred claims, advances the plaintiff to make this fight nominally in her behalf, but in reality in his own, and, in order to enable her to do so, becomes even her security for costs.

"If the case were as stated in her petition, her remedy at law would be complete. If the sale by the administrator as against her were wrongful, she might sue him as for a conversion, and probably might even follow the fund in equity as long as it could be identified. But her proof makes no such case. By standing by and seeing the administrator sell the property as

In re Est. of Meeker.

unincumbered property of the estate, she is equally estopped from suing the administrator as for a conversion, and from asserting a specific lien on the property and the proceeds, which she has waived by her conduct, and which she cannot re-establish upon the discovery of other claims against the estate.

"The proper course of the administrator, upon discovering the true state of facts, was to apply to the probate court for leave to redeem the mortgaged property under the provision of section 143 of the Revised Statutes. As the administrator has unquestionably acted from the best of motives, and, as the sequel shows, for the best interest of all parties concerned, he may even now ask credit for the amounts thus paid out, as paid out under circumstances contemplated under the provisions of that section. It would seem that, as the administration is still open, the probate court might even at this date allow such claim as a claim under that section, or as an advance made by the administrator for the benefit of the estate, if presented to it in proper form. The property, owing to its careful handling by the administrator, sold for $2,000.55, which was $706.25 more than its appraised value, and over $1,450 more than the amount of the mortgages, and it seems but plausible that, if the property would have been closed out under the mortgages, the judgment creditor as well as the widow would have received but little, if anything.

"All these facts tend to show a claim of the administrator for relief in the proper tribunal. While the probate court is not invested with independent equity jurisdiction, it is the proper forum to settle all matters which appertain strictly to the administration of the decedent's estate, and in doing so may, and often does, exercise power of an equitable nature. *Titterington v. Hooker*, 58 Mo. 593 ; *Ensworth v. Curd*, 68 Mo. 282 ; *Hammons v. Renfrow*, 84 Mo. 332 ; *McAlister v. Williams*, 23 Mo. App. 286."

The administrator, following the suggestion thus made by us, thereupon in his annual settlement for 1889 took credit for the two mortgaged notes, as paid by him out of the funds of the estate, and carried the credits into his final settlement. When he filed his final settlement, Swift appeared and filed exceptions to these items on the following grounds :

*First.* That the notes were never presented for allowance.

*Second.* That the court never authorized the administrator to pay them.

*Third.* That in fact the administrator did not pay said notes, or any part thereof.

*Fourth.* That the notes were for two years next following the grant of letters the property of Mrs. Meeker, and were not exhibited for allowance, and hence the claim is barred.

*Fifth.* That the administrator, having formally asserted on oath that the payment of said notes was made in the interest of Mrs. Meeker, and that he had been repaid, is now estopped from asserting the concontrary.

*Sixth.* That the court had no authority or jurisdiction to allow the claims.

*Seventh.* That the claims of Swift, which are for judgments, and fourth-class claims, are superior to those founded on these notes.

*Eighth.* That Mrs. Meeker, by her conduct, had waived the security of the chattel mortgages.

The probate court heard the exceptions and overruled them, and Swift appealed to the circuit court, where his exceptions were sustained and the judgment reversed, with directions to the probate court to disallow these two items of credit in the administrator's settlement.

Upon the hearing in the circuit court, no objections were made to any evidence offered, nor were any instructions either asked or given. The case was tried

by the court, and the court filed a written opinion in the case, embodying its views as to the law and its findings as to the facts on the evidence then before it, of which the material portions are as follows :

"The first question to be answered in the case is, what effect has the finding of the opinion of the court of appeals in the case of *Meeker v. Straat*, as to the facts and law of this case, on the finding and judgment to be rendered in this case ? On the one side, it is contended that the finding and judgment in that case are conclusive of this case both as to the facts and the law. If that contention is well founded, then all the evidence introduced in this case, except the mandate from the court of appeals, was irrelevant and incompetent. But I do not think the court of appeals intended their decision to have any such effect. What was therein said both as to the facts and the law was intended to apply to the case then in hand. In that case Mrs. Meeker took the position that she had bought the mortgage notes with her own money ; that the administrator had sold the property in violation of her own rights as mortgagee, and, in further violation of her rights, was about to pay the proceeds over to the judgment creditors. The court held that, if all that was true, her remedy was adequate at law against the administrator for conversion. The court also found that the evidence did not sustain her allegations ; that she had not bought the notes, but that the administrator had taken them up with the money in his hands as administrator ; that the property had been sold, not in violation of her rights, but with her consent ; that the administrator was not intending to pay the claim of the judgment creditor, but was really colluding with her to defeat his claim. As such did the facts appear to that court in the light of the evidence addressed to the issues involved in those pleadings, and upon those facts the court dismissed the plaintiff's bill. The bill being dismissed, the administrator now claims that he paid those mortgage debts

out of the assets of the estate, and that he is now enti-
tled to credit for the same in his final settlement.    If the
evidence in this case supports his allegation in that
respect, then, under the law as pronounced by our court
of appeals in *Meeker v. Straat*, he is entitled to the
credit he asks, otherwise not.

" If this case is open for trial at all on the evidence,
then it is the duty of the court to find the facts in
accordance with the convictions produced on its mind
and conscience by the evidence.

" It appears that, when Mr. Straat advanced the
money to take up the Porter note, no administration
had been taken out on the estate.    How could he prop-
erly say then that he paid it as administrator out of
the estate funds ?    And when he made the arrangement
for the Simpson note, he had in mind, not that he was
assuming a responsibility as administrator, but he and
Mrs. Meeker both understood that he was acting for her
and on her responsibility, he well knowing that he had
or would have in his hand sufficient of her funds to
make himself whole in any event.

" If the administrator, under full responsibility as
such, paid those mortgage notes out of assets of the
estate, he is entitled to the credit he asks; if, on the
other hand, they were obtained by him with the means
or on the credit of Mrs. Meeker, then he is not entitled
to the credits.    And although the title to the money
actually used might at the time have been vested in
him as administrator, yet if the transaction was so
guarded as that, in any event, there was no responsibil-
ity on the administrator, it is the duty of the probate
court, and of this court on appeal therefrom, though
not invested with independent equity jurisdiction, yet
exercising powers of an equitable nature, to look
through mere form into the substance, and determine
what the transaction really was.

" The evidence in this case leaves no doubt in my
mind that the intention of the parties was that Mr.

Straat, as agent of Mrs. Meeker, should buy the notes. for her, and pay for them with her means in his hands, and that that is what the transaction really was."

We have read with great interest the able arguments presented on both sides of this case, but we are forced to conclude that the position now taken by the appellant, namely, that the facts were adjudged in the former proceeding by this court, and, hence, were not open for review on the last trial, is untenable. This court made no finding of facts in the case of *Meeker v. Straat, supra*, except in so far as it was necessary to dispose of the case then before it. To that extent, and to that extent only, are the facts found by the court not subject to review in subsequent proceedings between the same parties, regardless of the form of the action or constituent parts of the tribunal. None of the cases cited go further. This court did not even make any finding of the law in that case, except on the points directly involved therein. Owing to the apparent hardship of the case, brought about by the happening of wholly unforeseen events, and its apparent equities, this court made *a suggestion* as to a mode of relief which *might* still be open to the administrator. Both the probate court and the circuit court adopted this suggestion, and the latter court, if we understand the language used in the opinion of the learned judge correctly, went even further, and held that the suggestion made by us was equivalent to a declaration of law, made by us, which it was bound to obey, provided the established facts of the case warranted its application. But, at the same time, the trial court felt bound to inquire into the facts upon the evidence adduced, and decide according to its conscience whether the facts established warranted the relief suggested. This proposition seems to have been conceded by the administrator. He did not plant himself on the decree of this court as a former adjudication of the facts in his favor. He took the witness-stand in his

own behalf, and gave substantially the same testimony which was contained in the transcript in Mrs. Meeker's case. He also introduced the same documentary evidence. In fact, he tried the case as if the question of *res adjudicata* was not involved. We, therefore, conclude that the circuit judge heard and disposed of the case upon the correct theory.

Before we pass to the discussion of the case on its merits, we must determine the nature of the proceeding. The exceptor claims that it is legal in its nature; that the issues involved were properly triable by a jury, and that the circuit judge, in disposing of the issues of fact, acted in the capacity of a jury. From this premise the argument is made that, if the finding of the court is supported by substantial evidence, and there are no errors of law intervening, such finding is conclusive upon us.

When the provisions of our statute concerning the final settlements of estates are considered, the conclusion inevitably follows that any controversy growing out of such settlements must be determined by a course of procedure analogous to that which obtains in courts of chancery. The final settlement of a dead man's estate in the probate court is analogous to a proceeding to take an account before a master in chancery. On such settlement, it is the duty of the probate judge to go over all prior annual settlements, and correct all errors and omissions therein ( *In re Davis*, 62 Mo. 450 ); to allow credits for all worthless assets ( *Julian v. Abbott*, 73 Mo. 580 ); to determine whether the administrator should be charged with interest on balances ( *In re Davis, supra* ); to determine whether credit should be given where money has been paid for the support of the widow and minor children without a previous order of court ( *Schoeneich v. Reed*, 8 Mo. App. 356 ); to determine whether an administrator is entitled to attorney's fees in making his final settlement ( *Jacobs v. Jacobs*, 99 Mo. 427 ); in fact, there are very many matters, both debit and credit, arising in the administration and settlement

of estates, which are left to the discretion or judgment of the probate judge. Such discretion is, of course, judicial, and subject to review. When objections are filed to a final settlement, the exceptors are not confined to the original objections, but they may, at any stage of the proceeding, file additional objections, and this would entitle the administrator to a postponement of the investigation, in order to meet the new issues tendered. In fact, the mode of procedure, in all of its aspects, is essentially equitable, and it would be impracticable, if not impossible, to dispose of the issues in such controversies by the verdict of a jury. We, therefore, conclude that the questions presented must be reviewed by us as chancellors.

We have read the evidence with care and attention, and have concluded that the decree of the circuit court in respect of the Porter note must be sustained. In Mrs. Meeker's case we were led into the belief, by the able and ingenious argument of the exceptor's counsel, that Straat had taken up both notes *as administrator*. Acting on this impression of the evidence, we traveled outside of the record, and suggested how he could obtain credit for them on his final settlement. But on this trial it is made quite clear that our impressions of the evidence, as to the Porter note at least, were ill founded. Mr. Straat declares that he did not purchase or take up the notes as administrator, but as the agent of Mrs. Meeker, and that any inferences drawn by us to the contrary in the former suit were unwarranted. This declaration of Straat as to the Porter note is borne out by the facts attending its purchase. Prior to his appointment as administrator, he went with Mrs. Meeker to see Porter concerning the purchase of the note. It was then purchased, and was assigned and delivered to Mrs. Meeker. Straat paid for it by giving his check, but he did this for Mrs. Meeker. Under this condition of the proof, we cannot conceive how Straat is to get credit in his accounts as administrator for money advances for Mrs. Meeker.

Concerning the note held by J. H. Simpson, we have arrived at a different conclusion, in spite of the declarations of Mr. Straat that he also purchased this note for Mrs. Meeker. The note was dated on the second day of February, 1886, and was due in ninety days. It was secured by a chattel mortgage on all property owned by Meeker at the time of his death. At the death of Meeker the legal title to the property was vested in the trustee named in the Simpson mortgage. Meeker only had an equity of redemption. Simpson was entitled to its possession under his mortgage. Before Straat was appointed administrator, he requested Simpson to take up the Porter note and carry the entire indebtedness until such time as the property could be disposed of to an advantage. Simpson declined to do this. After Straat was appointed administrator, he prevailed on Simpson to consent to a private sale of the mortgaged property. Concerning this agreement and the subsequent payment of the Simpson debt, we gather the following from Straat's testimony: "Mr. Simpson declined to become the holder of both of the secured notes, but consented that the administrator might make a sale of the property *provided he was paid out of the assets.* I went to work and advertised the property at administrator's sale, * * *. After the sale I drew my check as administrator for the amount of the $410 note, and I gave it to Mr. Simpson, and I think it amounted with interest to $446 and something. I can't remember the exact amount."

In the light of this evidence the payment of the Simpson note cannot possibly be turned into a purchase either by Straat or Mrs. Meeker. It was an absolute satisfaction of the debt by Straat as administrator. Under the agreement Straat was under a legal obligation to pay Simpson's debt out of the proceeds of sale. Had he refused, Simpson would have had a right of action against him for money had and received. The

proceeds of the sale belonged primarily to Simpson. Straat as administrator could only lay claim to the balance after Simpson had been paid, and this balance only was the amount with which Straat was properly chargeable in his accounts as administrator.  If he had done this instead of carrying the entire amount into his settlements, the Simpson debt would have become a question in the administration of the estate only so far as it might have been necessary to show the existence of the mortgage and the amount due thereunder, which clearly appears by this record and seems to be undisputed.  As it *is*, he has the right on his final settlement to correct the debit side of his account in this respect, or, what amounts to the same thing, he should be allowed to take credit for the amount of the Simpson note.  Hence we conclude that the circuit court was wrong in disallowing the credit for the Simpson note.

The only other question arising in the case is, whether the administrator is entitled to an allowance for attorneys' fees in defending his final settlement.  He presented a claim for such allowance in the circuit court, and that court disallowed it.  It is proper to state in this connection that, besides the two items of credit in the settlement which the circuit court disallowed, two other items, amounting in the aggregate to $700, were challenged by the exceptor Swift, but were allowed as proper items of credit by both the probate and the circuit court.  The order of the circuit court remanding the case to the probate court makes a disposition of the entire balance in the administrator's hands, which throws the cost of defending these two items upon him. Under section 229, Revised Statutes, 1879, and its construction by the supreme court in *Jacobs v. Jacobs*, 99 Mo. 427, the administrator is entitled to a reasonable attorney's fee for defending his final settlement. The judgment of the circuit court will, therefore, be so modified as to authorize the probate court to make an allowance to the administrator of a reasonable attorney's

fee for defending his settlement in the circuit court, and also the Simpson debt, to be deducted from the balance in his hands, and will, as so modified, be affirmed. The costs of the appeal to be paid by the exceptor. Judge ROMBAUER concurs. Judge THOMPSON dissents.

ROMBAUER, P. J. (*concurring*).—If this action is one at law, and the functions of the trial court are those of a jury, then no warrant exists for disturbing the finding and judgment. If, on the other hand, the proceeding is one in equity, as assumed in the opinion, then the result therein reached can be supported on tenable grounds. It is one which is in conformity with the manifest equities of the case. The record shows waivers of a trial by jury in the lower court, and the court and counsel seem to have assumed that the action was at law. It is probably for this reason that we had no aid from counsel in determining the nature of the action. The reasons why proceedings of this character should be treated as proceedings in equity are well stated in the opinion, and, in the absence of any controlling decision to the contrary in this state, I am inclined to concur in that view.

This objection out of the way, the only remaining objection seems to be that the opinion disposes of the case on a different theory from the one upon which it was tried below, and that it does not confine itself to the errors assigned in this court. Conceding the danger of such a practice as a rule, it would seem that no harm can result from it in this case. Under the uncontroverted facts, the administrator should not have charged himself with so much of the proceeds arising from the sale of the property as were necessary for the payment of the Simpson note. Whether he gets credit for this amount by deduction from the inventory, or by allowance of the note paid as credit, does not change the result. As equity deals with the substance of things and not their form, we are not warranted in

In re Est. of Meeker.

remanding the cause, for the sole reason that the same result might be attained in a manner which is technically more correct. It is for these reasons that I concur in the result reached in the opinion.

THOMPSON, J. ( *dissenting* ).—I concur in the opinion of the court in this case in so far as it reverses the judgment of the circuit court in respect of the Simpson note ; but I do not concur in it in so far as it affirms the judgment in respect of the Porter note. My re-examination of this case impresses me with the conclusion that we have been floundering around in a helpless sort of way, in a mire of technicalities, and that we have reached the result that the creditor of a deceased person can collect a part of his debt out of the separate allowance of an insane widow. That the law of Missouri is in such a state as to render such result inevitable, I do not for a moment believe. My view of judicial administration is that the law is sufficiently flexible, and has within itself sufficient principles, to enable the judges to do justice in a case of this kind, if they search diligently to find grounds upon which to do it. Such a re-examination of this case as I have found time to make has created a strong impression upon my mind that our opinion in the former case in 38 Mo. App. 245, while technically right, was substantially erroneous. My present view is that that action was capable of being sustained for the purpose of working out the equities of Mrs. Meeker on the theory of subrogation ; and that, as all parties interested were before the court, and as the decree there rendered reached the very right of the case, we ought to have cut through narrow technicalities and affirmed it. My recollection is distinctly to the effect, that I concurred in that opinion on the theory that, as the statute law has committed the entire administration of the estates of deceased persons to the probate court, the equities of Mrs. Meeker could not be worked out by a separate proceeding in a court of equity ; but that the

In re Est. of Meeker.

probate court had ample power to work out those equities in the manner pointed out in the opinion. That manner was pointed out in the following language: "As the administrator has unquestionably acted from the best of motives, and, as the sequel shows, for the best interests of all parties concerned, he may even now ask credit for the amount thus paid out, as paid out under circumstances contemplated under the provisions of that section. It would seem that, as the administration is still open, the probate court might, even at this date, allow such claim as a claim under that section, or as an advance made by the administrator for the benefit of the estate, if presented to it in proper form. The property, owing to its careful handling by the administrator, sold for $2,000.55, which was $706.25 more than its appraised value, and over $1,450 more than the amount of the mortgages, and it seems but plausible that, if the property would have been closed out under the mortgages, the judgment creditors, as well as the widow, would have received but little, if anything. All these facts tend to show a claim of the administrator for relief in the proper tribunal. While the probate court is not invested with independent equity jurisdiction, it is the proper forum to settle all matters which appertain strictly to the administration of the decedent's estate, and in doing so may, and often does, exercise powers of an equitable nature."

My recollection is distinctly to the effect that I would not have concurred in that opinion, had I not supposed that the language above quoted was the deliberate expression of this court upon the law of this case, as affecting the rights of all the parties then and now before the court. I remain of the same opinion. I am of the opinion that the learned judge of the probate court was right in regarding this direction as the deliberate expression of this court in respect of the law of the case, and in allowing the administrator the credits which this court said he might be allowed. My view of

the manner in which appellate courts ought to treat their own judgments is, that this court ought to adhere to those expressions as expressions of the law of the case, whether we are of opinion now that they were soundly or unsoundly expressed. Appellate courts may, and sometimes do, overrule their former holdings in the same case, where they discover that it is necessary to do so in order to avoid grave errors and grave injustice. But, if, in the present case, we let ourselves down to the position that the above language was not in the nature of a direction, but was merely in the nature of a suggestion, we depart from the position then taken, not for the purpose of doing justice, but for the purpose of allowing injustice, and of reaching the result which I have already stated.

In respect of the Porter note, I understand the evidence to be, that Mr. Straat advanced the funds to Mrs. Meeker to take that up before he had taken out letters of administration on the estate of Mrs. Meeker. His position in the case is, therefore, simple, so far as the protection of his own rights is concerned. It is that Mrs. Meeker is his debtor. It will result that, in his settlement with her, he will deduct this amount from funds in his hands belonging to her. She is now in an insane asylum. The consequence will be that a creditor of her husband will get this much money out of her separate allowance. The law does not contemplate such results, and I repeat that I do not believe that the law of Missouri is in such a state that the judges, with all the facts before them, are obliged to allow such results to take place, because of a mere mistake of fact.

I am, therefore, of opinion that the judgment of the circuit court ought to be reversed, and the cause remanded with directions to enter a judgment in conformity with the judgment of the probate court.