ETHEL SEIBERT v. MAUD HARDEN ET AL., Legatees under Last Will of FREDERICK MOLL, Appellants.—8 S. W. (2d) 905.

Division One, May 18, 1928.

*Taylor R. Young* and *Abbott, Fauntleroy, Cullen & Edwards* for appellants.

*Joseph Block* for respondent.

GANTT, J.—This is an appeal by Maud Harden, Fred Moll, a minor, Alma Moll and Robert Moll from an order of the Circuit Court of the City of St. Louis striking from the files their motions to vacate and revoke the appointment of Philip Pollack as receiver to take charge of the real estate of the deceased, Frederick Moll, pending a will contest. Frederick Moll died testate September 3, 1922, naming Philip Pollack executor of his will. The estate consisted of personal property valued at $18,000, and real estate valued at about $132,000. The annual gross income from the real estate is about $10,000, and the debts were less than $5000. He gave to his nephews, nieces and others various sums, amounting to $20,500, and divided the remainder of the estate between Fred Moll, a grandson, and Seigfried Pollack, a son of Philip Pollack. The will was admitted to probate in the Probate Court of the City of St. Louis September 6, 1922. Pollack qualified as executor and obtained an order from the probate court directing him to take charge of the real estate and to rent or otherwise employ the same for the purpose of providing funds for the payment of legacies. He took charge under said order October 18, 1922, and proceeded to rent the real estate for said purpose.

On July 26, 1923, Fred Moll, by his curatrix, Maud Harden, instituted a suit in the Circuit Court of the City of St. Louis against Seigfried Pollack, Philip Pollack, Ethel Seibert et al. to contest the will. On July 27, 1923, Pollack was notified that on July 30, 1923, an application would be made to the probate court for the appointment of an administrator pending the will contest. Thereupon, Ethel Seibert, daughter of Philip Pollack and a legatee under the will to the amount of $1000, immediately instituted this independent proceeding in the Circuit Court of the City of St. Louis against the other legatees and Maud Harden, curatrix. The petition prayed for the appointment of her father, Philip Pollack, as receiver to take charge of the real estate pending the will contest. The case was assigned to Division 14 of the Circuit Court of the City of St. Louis, presided over by His Honor, Judge A. F. Ittner, who is admitted to be a personal friend of Philip Pollack. Immediately upon the filing of said petition and without service upon or notice to defendants, the court entered an order of record appointing Philip Pollack receiver, and approved his bond in the sum of $10,000. A copy of said order was served upon defendants about July 30, 1923. On August 1, 1923, defendants Maud Harden and Fred Moll entered their appearance in said cause and filed their answer, which challenged the jurisdiction of the circuit court to appoint a receiver. On the same day they

filed a motion to revoke the order appointing a receiver and to award defendants a hearing, which motion challenged the sufficiency of the petition, the jurisdiction of the court to make the appointment, and the qualifications of Philip Pollack because of interest.  On August 2, 1923, the defendants Alma Moll, Robert Moll, Emma Paust and Bernice Lehman filed a like motion.  On September 10, 1923, Otto Hampe, Public Administrator, was appointed administrator *pendente lite* under his official bond.  On December 10, 1923, the probate court set aside this order and appointed Hampe administrator *pendente lite*, fixing his bond at $25,000, which bond was given and approved. On September 18, 1923, Hampe, as administrator *pendente lite*, and Maud Harden, curatrix, filed an application in this court for a writ of prohibition commanding the judges of Division 14 and each of them to desist and refrain from further proceeding on, with or under the court's order appointing said receiver.  Our preliminary rule was ordered to issue.  In that case we held the circuit court had jurisdiction to appoint the receiver.  Peremptory writ was denied on June 5, 1924.  [State ex rel. Hampe v. Ittner, 263 S. W. 158.] The motions in the circuit court to revoke the appointment of the receiver had been continued from term to term pending a decision of said case in this court.  On October 27, 1924, plaintiff (Ethel Seibert) filed motions (hereinafter called motions to strike) in the circuit court to strike from the files the motions (hereinafter called motions to revoke) of defendants to revoke the appointment of the receiver.  In the motions to strike it is alleged that defendants by electing to proceed by prohibition thereby waived their rights, if any, under the motions to revoke, and that all matters and things presented to the circuit court in said motions to revoke were adjudicated in the case of State ex rel. Hampe v. Ittner, supra.  On January 23, 1925, the motions to strike and motions to revoke were heard and taken under advisement.  The motions to revoke were submitted upon evidence adduced and agreed statement of facts.  On February 16, 1925, the motions to strike from the files the motions to revoke the appointment of a receiver were sustained.

It will not be necessary to set forth the evidence adduced and the facts agreed upon on the hearing of the motions of defendants to revoke the appointment of a receiver.

The case of Fred Moll et al. v. Seigfried Pollack et al., to contest the will was, in due course, assigned to Division 3 of the Circuit Court of the City of St. Louis.  On June 21, 1924, a jury returned a verdict, finding the paper writing in evidence was not the last will of Frederick Moll, deceased, and judgment was entered thereon. Defendants appealed, and we affirmed the judgment in an opinion by Davis, C., 319 Mo. 744.

I. Respondent contends that no appeal lies from the order of the court sustaining her motions to strike from the files the motions of appellants to revoke the order appointing a receiver, citing Section 1469, Revised Statutes 1919.

A similar question was ruled in Blemel v. Shattuck (Ind.), 33 N. E. l. c. 279, where it is said:

"Then the motion of appellees to strike out appellants' motion to set aside the commissioners' report was superfluous motion, as was said by this court in White v. D. S. Morgan & Co., 119 Ind. 340, 21 N. E. 968, that 'a motion to strike out another motion, to strike out and to reject a demurrer, are usually frivolous, and ought not to be entertained or entered of record, by the trial court.' And so we hold that such motion ought not to have been entertained. Indeed, the court ought not to have allowed the same to be filed, and, after it was filed, ought, of its own motion, to have stricken it out as a needless incumbrance of the record, because the same relief demanded and the same question raised by it would be afforded and raised by a proper ruling on the other motion. But the trial court did entertain such a motion, and actually sustained it, and the question we have to determine under this assignment of error is, was it error to sustain such motion? The answer to that question depends to some extent upon what effect the sustaining of such second motion had upon the first motion. It cannot be justly said that it had no effect. The court below has treated it as if it had some effect upon the first motion, namely, to strike it from the files. For all practicable purposes it had the same effect as overruling the first motion would have had. Upon reason it would seem that if the court sustained a motion to strike out a motion such act indicates that the court was of opinion that the first motion was not well taken, and, therefore, ought not to be sustained. It would seem to follow that the trial court, by entertaining the second motion to strike out the first, indicated a purpose and intention to hold that the first motion was not well taken, and ought to be overruled. This precise point was adjudged by the Supreme Court of California in Lang v. Superior Court, 71 Cal. 491, 12 Pac. 306. It is there held that sustaining a motion to strike out another motion is equivalent to overruling the first motion. We think that decision is a correct declaration of law, and, therefore, we adjudge that the sustaining of the motion to strike out the motion to set aside the report has the effect to overrule the latter motion. And though the error assigned is the sustaining the motion to strike out the other motion, we will treat it as if the error assigned was overruling the motion to set aside the report, for such is the effect of the action of the lower court assigned for error."

The motions to strike and the motions to revoke were, by the court, considered together. Appellants appealed from the order of the

court striking from the files the motions to revoke. This is equivalent to an appeal from an order of the court overruling the motions to revoke, for the court by sustaining the motions to strike overruled the motions to revoke.

In this connection respondent contends appellants limited their assignment of errors to the actions of the court on the motions to strike. Even so, the assignment covers the overruling of appellants' motions to revoke, for by sustaining respondent's motions to strike, the court overruled appellants' motions to revoke. In addition, appellants assign as error the refusal of the court to revoke the order appointing a receiver. The contentions are overruled.

II. As stated, we held in the Hampe case the circuit court had jurisdiction to appoint a receiver. Respondent contends our decision in that case determined the question and that it is not now open for examination. Appellants contend the decision was wrong and the question should be re-examined. Is the question open for consideration on this appeal? While the Hampe case was an original proceeding in this court, we will treat the decision in that case as a decision of this court on a former appeal. In ruling the question we cited, as sustaining the decision in said case, Section 1449, Revised Statutes 1919; Abramsky v. Abramsky, 261 Mo. 117, 168 S. W. 1178; State ex rel. Davis v. Ellison, 276 Mo. 642, 208 S. W. 439; State ex rel. Mueller v. Wurdemann, 232 S. W. 1002.

Section 1449 is as follows:

"The court, or any judge thereof in vacation, shall have power to appoint a receiver, whenever such appointment shall be deemed necessary, whose duty it shall be to keep and preserve any money or other thing deposited in court, or that may be subject of a tender, and to keep and preserve all property and protect any business or business interest entrusted to him pending any legal or equitable proceeding concerning the same, subject to the order of the court."

This statute has no application to the estates of deceased persons in the custody of the probate court for the purpose of administration. By Section 34, Article VI, of the Constitution probate courts are given exclusive jurisdiction over all matters pertaining to probate business. If the statute authorized the appointment of a receiver under the facts in the instant case, it would be violative of this section of the Constitution.

The Abramsky case was an action for an accounting and prayed for a restraining order and the appointment of a receiver pending the litigation. The jurisdiction of the court over the proceeding was not questioned. The sufficiency of the petition and the fitness of the

person appointed to act as receiver were the only questions for review.

In the Davis case it was held that priority of service rather than the time of the institution of suits determined the jurisdiction in divorce suits instituted by a husband and wife against each other in different courts.

The Wurdemann case was an action under Section 168 et seq., Revised Statutes 1919, to enforce a contract made with a decedent for the purchase of land. It was begun in the probate court and transferred to the circuit court. We held if specific performance was enforced, the land in question would be no part of the estate of the deceased, and that the rents and profits of the real estate from the time the contract should have been performed belonged to the purchaser; and until the rights of the purchaser had been determined by the circuit court it could not be deprived of its jurisdiction to adjudicate the controversy and to render a judgment which would afford full and adequate relief to the purchaser. Thus, it appears these cases and the statute do not sustain our decision in that case. We did not rule correctly.

In the case of Murphy v. Barron, 286 Mo. 390, l. c. 400, 228 S. W. 492, we said:

"The decision on the former appeal is not *res adjudicata* in the full sense. It is not a judgment from which the court cannot legally depart on the second appeal in the same case. Under the decisions in this State it is not an absolute and final determination of all matters decided of such inexorable force that the court must adhere to it on this appeal at all events and whether it be right or wrong. The general rule is that matters decided on one appeal will be considered settled on a second appeal in the same case, unless exceptional circumstances call for a re-examination of them."

The exceptional circumstances are stated in Mangold v. Bacon, 237 Mo. 496, l. c. 517, 141 S. W. 650, as follows:

"Whether from grace or right, when cogent and convincing reasons appear, such (1) as lack of harmony with other decisions and where no injustice or hardship would flow from a change, or (2) where by inadvertence principles of law have been incorrectly declared the first time, or (3) mistake of fact has been made, or (4) injustice to the rights of parties would be done by adhering to the first opinion, then the exceptions to the rule have play and it is our duty to re-examine and correct our own errors on the second appeal in the same case."

The appellants are seeking a reversal of the judgment appointing a receiver. The respondent and the other legatees are no longer interested in the estate, for it has been judicially determined that the paper writing admitted in evidence was not the will of Frederick

Moll, deceased. Therefor, no injustice to the rights of the parties would follow a re-examination of the question. The only person interested in the result of this review is the receiver. His interest is a question of fees and is only an incidental interest. In addition, the question first reached this court in the Hampe case, and we should make haste to correct the error. In that case the learned Commissioner stated that the appellants in the instant case "had the legal right to appeal from an order appointing said receiver, and having failed to do so were not entitled to maintain this action." This is a misstatement, for the defendants did appeal from the order appointing a receiver, and we are, in the instant case, reviewing said order. The former decision comes within the exceptions, and we should re-examine the question.

III. We next consider the contention of appellants that the circuit court had no jurisdiction to appoint a receiver for the reason the probate court had exclusive jurisdiction over the real estate during the administration of the estate of Frederick Moll, deceased.

The jurisdiction of probate courts is fixed by Section 34 of Article VI of the Constitution, as follows:

"The General Assembly shall establish in every county a probate court, which shall be a court of record, and consist of one judge, who shall be elected. Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians and the sale or leasing of lands by administrators, curators and guardians; and also jurisdiction over all matters relating to apprentices: Provided, That until the General Assembly shall provide by law for a uniform system of probate courts, the jurisdiction of probate courts heretofore established shall remain as now provided by law."

In Scott v. Royston, 223 Mo. 568, 123 S. W. 454, we considered the jurisdiction of the circuit court to hear an application for the sale of real estate to pay the debts of the deceased. In that case we quoted, with approval, from the opinion of NORTONI, J., in Matson & May v. Pearson, 121 Mo. App. 120, l. c. 128, 97 S. W. 983, the following:

"From the allegations and prayer of the bill, it is obvious that the pleader intended to and does seek equitable relief, hence the question arises whether or not a court of equity has jurisdiction to entertain the bill on the facts stated. It is determined and abundantly supported by both principle and authority that a court of equity will not assume jurisdiction of a claim against an estate of a deceased person

1114

until it has been made to appear that the probate court cannot afford the requisite relief. [2 Woerner's Law of Administration, 815-816; 1 Ib., p. 356; Adams v. Adams, 22 Vt. 57; Harrison v. Douglas, 64 Ill. 466, 469; Blanchard v. Williamson, 70 Ill. 647-651; Miller v. Woodward, 8 Mo. 169; Pearce v. Calhoun, 59 Mo. 271; Titterington v. Hooker, 58 Mo. 593; In re Estate of Meeker, 45 Mo. App. 186; Meeker v. Straat, 38 Mo. App. 239; Overton v. McFarland, 15 Mo. 312.] The principle thus announced pervades the entire system of equity jurisprudence and is to the effect that equity interposes only to supply the deficiencies of the law and therefore if it appears that a party has an adequate remedy at law, equity will point him to that court for relief and decline to assume jurisdiction. It is suggested, however, that even though the claims presented in the bill be demands against the estate within the meaning of the administration law, and as such cognizable in law courts, this equitable proceeding may be sustained upon the principle that inasmuch as under the English rule, courts of chancery assumed jurisdiction in nearly or about all manner of instances with respect to estates of deceased persons and the administration thereof, and that the doctrine is firmly established to the effect that whenever chancery once had and entertained jurisdiction, such jurisdiction continues and the subsequent grant of remedy at law will not oust the court of equity of its jurisdiction in the premises unless equitable remedy is extinguished by direct and positive prohibitory provisions in the statute conferring such remedy at law. There is no doubt but such is the rule which obtains with us and elsewhere. [Woodward v. Woodward, 148 Mo. 241; Stewart v. Caldwell, 54 Mo. 536; 1 Story's Eq. Juris. (13 Ed.) secs. 64-1 and 80.] Now, it appears that in England, the subject of the settlement and disposition of estates of deceased persons, is or was, a matter over which the ecclesiastical and chancery courts, to a very large extent, exercised what seemed to be a concurrent jurisdiction, and it is pointed out in the history of that jurisprudence that the courts of chancery so lightly esteemed the proceedings of the ecclesiastical courts with respect to matters of administration that they did not hesitate to take the subject from them, etc., but upon examination of the authorities, the reason for the exercise of this jurisdiction by the courts of chancery is discovered to be that the chancery courts asserted the prerogative on account of the inadequacy of the powers and infirmities of the ecclesiastical courts to meet the exigencies presented and to render complete justice to all concerned. So we ascertain the true ground upon which chancery courts assume jurisdiction in these cases to be, either, that the remedy at law did not exist at all or was not 'full, adequate and complete.' [Miller v. Woodward, 8 Mo. 161-173; Adams v. Adams, 22 Vt. 50-57; 1 Story's Eq. Juris. (13 Ed.) sec. 534.] And indeed this was but

the application of the same ancient principle of equity jurisprudence heretofore adverted to. It has been pointedly decided, however, by our Supreme Court that the reason on which equity interposed in matters of administration in the old days does not obtain with us and that the principle suggested has no application in view of our statutes with respect to administration. It is pointed out that they are so full and complete, abounding with apt and pertinent provisions to administer full, complete and adequate relief at law, and that their provisions are so ample with respect to matters of administration that they amount to an exclusion, in fact, of the chancery jurisdiction asserted, unless there be some fact or facts involved which render the case one where adequate relief at law cannot be had. [Miller v. Woodward, 8 Mo. 169-174; Overton v. McFarland, 15 Mo. 312; Titterington v. Hooker, 58 Mo. 593; Pearce v. Calhoun, 59 Mo. 271; Adams v. Adams, 22 Vt. 50-57; 1 Woerner's Am. Law of Administration, 355-356.]''

In the Scott case, after reviewing all the authorities, we stated:

''Whatever may have been the chancery practice prior to the adoption of our present system of probate laws, since then we are clearly of the opinion that the circuit courts of the State have no jurisdiction whatever over any matter pertaining to probate business, except in rare instances, as before indicated. The jurisdiction over all such matters is given to the probate courts by the Constitution and laws of this State. Said courts are courts of record and they have exclusive original jurisdiction within their respective counties in all cases arising under the general laws of the State relating to the administration of estates and to all matters pertaining to probate business.

''We are, therefore, of the opinion that the Circuit Court of Daviess County had no jurisdiction or authority over the subject-matter of the suit of Robie Scott et al., ex parte, filed therein on February 4, 1885, praying for an order to sell the real estate of Andrew J. Scott, deceased, for the purpose of paying the debts of the estate. That authority rested exclusively with the probate court of that county.''

With this understanding of the jurisdiction of probate courts, we next direct attention to the following sections of the Revised Statutes 1919:

''Sec. 13. If the validity of a will be contested, or the executor be a minor, or absent from the state, letters of administration shall be granted during the time of such contest, minority or absence to some other person, who shall take charge of the property and administer the same according to law, under the direction of the court, and account for and pay and deliver all the money and property of the estate to the executor or regular administrator when qualified to act.

·"Sec. 129. No administrator or executor, *except an executor acting under power conferred by will*, shall rent or control the real estate of the deceased, unless the probate court having jurisdiction shall be satisfied that it is necessary to rent said estate for the payment of debts, and make an order of record requiring such administrator or executor to take possession of and rent the same for a period of not exceeding one year; and upon such order, such executor or administrator may prosecute and maintain any action for the recovery of such real estate in the same manner and with like effect as the testator or intestate might have done in his lifetime: *Provided, however*, that the court at the time of making any such order shall require the administrator or executor to enter into and file, to be approved by the court, a good and sufficient bond in double the amount of any sum that may come into the hands of the administrator or executor under such order of the court.''

We quote the following statutes to show the trend of legislation with reference to the authority of the probate courts over the real estate of the deceased:

''Sec. 130. Whenever letters of administration or testamentary shall have been granted on an estate, and it shall appear to the court or judge in vacation, that the ·decedent died possessed of real estate in the state,· and his heirs or legatees have failed to take charge of same, or the identity or whereabouts of such heirs or legatees are unknown, then the court or judge in vacation may on its or his own motion, or that of any party interested, direct the administrator or executor 'in charge of said estate, to take charge [of] and manage the real estate, until such time as such heirs or legatees shall appear and petition the court to turn the management of said ' real estate over to them, or until the same shall escheat to the state as is provided by the 'escheat act.'

''Sec. 131. When any house, outbuilding, fence or other improvements on the real estate requires repairs, the court may, on the application of any person interested, order the excutor or administrator to cause the necessary repairs to be made, whenever such repairs can be done without prejudice to the creditors.

''Sec. 132. The sale and conveyance of real estate under a will shall be made by the acting executor or administrator with the will annexed, if no other person be appointed by the will for that purpose, or if such person fail or refuse to perform the trust.''

The petition is as follows:

''The plaintiff states that she is a legatee to the extent of one thousand dollars in the last will of Frederick Moll, deceased, and that the defendants are also legatees in various sums under the said will; that on the 14th day of February, 1921, Frederick Moll, now deceased, declared to be his last will and testament a certain instru-

ment thereafter admitted to probate in the Probate Court of the City of St. Louis, on the 6th day of September, 1922; that on the said 6th day of September, 1922, said instrument in writing was duly proven to be the last will and testament of Frederick Moll, deceased, and thereupon duly admitted to probate in the said Probate Court of the City of St. Louis; that by the said will the said testator, after giving to the said defendants, naming them as legatees, various sums of money, devised all the rest, residue and remainder of his estate between Fred Moll, a grandson of him, the said testator, and Seigfried Pollack, a son of Philip Pollack; that the estate devised by the said last will consisted for the most part of real estate and did not comprise personalty sufficient to pay or satisfy the said legacies provided for and devised to the said legatees defendants herein.

"The said plaintiff further states that after the probate of the said will, Philip Pollack, the executor named therein, obtained from the Probate Court of the City of St. Louis an order directing him to take possession and assume management and control of the real estate devised and disposed of by the said will and to rent or otherwise employ the same for the purpose of meeting, defraying and paying legacies provided for and devised by the said will and that under such order, to-wit, on or about the 18th day of October, 1922, the said Philip Pollack took possession of such real estate, rented the same for the purposes aforesaid and now is in possession of the said real estate and managing the same for the purpose herein as indicated.

"The said plaintiff further states that on the 27th day of July, 1923, Maud Harden, as curatrix of the estate of Fred Moll hereinbefore named, notified the said Phil Pollack who is named as executor of the said last will of the said Fred Moll, deceased, that on Monday, the 30th day of July, 1923, she would apply to the Probate Court of the City of St. Louis for the appointment of an administrator pending a suit to declare the said last will of the said Fred Moll, deceased, to be void, which said suit has been instituted by the said Maud Harden and is now pending in the said Circuit Court of City of St. Louis, in which said suit, in conformity with the statute for such case made and provided, an administrator *pendente lite* will be appointed by the said Probate Court of City of St. Louis.

"The plaintiff states further that the real estate devised by the said last will as aforesaid is as follows: [Here follows description.]

"The plaintiff states further that the said real estate will not be needed to be disposed of for the payment of debts, but that it should be suffered to remain under the order heretofore made for the purpose of the payment of legacies; that in the event that the will of the said testator be set aside and adjudged void there will be ample cash

1118

and personal property with and out of which to meet all obligations of the estate of the said deceased, and leave a balance as plaintiff is advised of more than the sum of fifteen thousand dollars.

"Wherefore, the premises considered, the plaintiff prays that by the proper order of the court a receiver may be appointed to take charge of and continue in charge of said real estate pending this suit to avoid the will of the said testator and that the said Phil Pollack, executor under the said will and trustee, and who is at present in charge of the said real estate, may be designated as such receiver, and retain in the possession thereof for the purposes indicated in the order heretofore made in regard thereto."

The authority of the executor over the real estate is set forth in the will, as follows:

"I hereby authorize and direct my said executor to collect the rents and profits of my real estate and to expend the monies to make needed repairs; and with full power to rent, lease or sell any or all of my real estate and to convey the same without obtaining authority from the Probate Court, the authority being hereby granted to do all such necessary acts. My executor is directed to pay the legacies hereinbefore made in such installments as in his opinion will not entail loss to the estate."

In the case of St. Louis National Bank v. Field, 156 Mo. 306, it is said:

"Under our law, upon the death of an intestate his whole estate, real as well as personal, is liable to come into the hands of his administrator for the payment of his debts. The administrator is not authorized to take possession of the real estate until ordered to do so by the probate court, but when so ordered, and when he takes possession under such order, the land is *in custodia legis*, and the administrator is liable on his bond for the lawful application of the rents arising out of it. It is his duty to collect the rents, and if so ordered by the probate court pay off the mortgage, if any, on the land, or if the court so order, sell it subject to the mortgage. [Eoff v. Thompkins, 66 Mo. 225; State to use v. Purdy, 67 Mo. 89; Lewis v. Carson, 93 Mo. 587.] The fact that the estate is insolvent and unable to redeem the mortgage, or that the mortgaged property is insufficient for that purpose, is a subject to influence the probate court in determining what orders it will make in reference to the mortgaged property, but it does not affect the jurisdiction of that court over the subject." To the same effect: Rollins v. Shaner, 292 S. W. l. c. 421.

The executor, Philip Pollack, was acting under power conferred by the will when he obtained the order from the probate court directing him to rent the real estate to pay legacies. The court was authorized to make the order, and in doing so assumed and exercised

jurisdiction over the real estate as a part of the estate of Frederick Moll, deceased. The will contest did not oust the probate court of jurisdiction over the estate. [Johnson v. Brewn, 277 Mo. 1. c. 397, 210 S. W. 55.]

On October 18, 1922, Pollack took possession of the real estate under said order to rent same for one year. He managed, controlled and rented the real estate until July 27, 1923, at which time he was notified that on July 26, 1923, suit had been instituted in the circuit court to contest the will and that application would be made to the probate court on July 30, 1923, for the appointment of an administrator *pendente lite*. The institution of the suit to contest the will revoked the right of Pollack to control the real estate. [Johnson v. Brewn, 277 Mo. 1. c. 396; Byrne v. Byrne, 289 Mo. 1. c. 126, 233 S. W. 461.] The fees connected with the management of the real estate were so attractive that Pollack, immediately, through his daughter, Ethel Seibert, instituted this proceeding in an effort to defeat the legitimate exercise of jurisdiction over the real estate by the probate court pending the will contest. It is impossible to reach any other conclusion. The petition pleads no equitable grounds such as fraud, mismanagement or dissipation of income. The only reason set forth in the petition for the appointment of a receiver is that plaintiff thinks her father should continue in control of the real estate for the purpose of paying legacies. If the probate court had jurisdiction over the real estate pending the will contest, and we so hold, the circuit court was without jurisdiction to appoint a receiver.

In the case of In re Estate of Soulard, 141 Mo. 642, 1. c. 673, 43 S. W. 617, the authority of an administrator *pendente lite* to rent the real estate pending a will contest was under consideration, and we ruled the statute (Section 13) was broad enough to include real estate. The authority of the administrator *pendente lite* in that case to rent the real estate does not appear in the facts stated in the opinion. If the executor was authorized by the will to rent the real estate and the probate court so ordered, the case was ruled correctly. Some of the language used is criticized in the case of the Union Trust Co. v. Soderer, 171 Mo. 675, 1. c. 681. In the Union Trust Co. case, the plaintiff as administrator *pendente lite* instituted suit against the defendants to recover real estate which the petition alleged belonged to the estate of Alois Soderer, deceased. Defendants held possession as trustees under the will. It was ruled correctly that the administrator *pendente lite* was not entitled to the possession of the real estate. It did not appear that the executor was directed by the will to take charge of the real estate and that the probate court so ordered. In that case we said:

"He is to do, while his office lasts, whatever an administrator should do to protect the interests of the estate for those who are en-

titled to its benefits. He may sue for and collect its assets, guard the estate in the matter of demands against it; and, if it appears that there will not be sufficient personalty to pay debts, he may apply to the probate court and obtain authority to take possession of the real estate and collect the rents therefrom."

We further said:

"But unless it appears to be necessary to draw the real estate into the administration for the payment of debts, the administrator *pendente lite* has no concern with it."

We do not agree to this last statement. The learned judge who wrote the opinion overlooked Section 129, Revised Statutes 1919, which provides that an executor acting under the power conferred by will may rent or control the real estate of the deceased.

The failure of the probate court to immediately appoint an administrator *pendente lite* and to require him to give bond did not give the circuit court jurisdiction to appoint a receiver. No doubt the confusion attending the proceedings in the circuit court delayed the action of the probate court. In due time an administrator *pendente lite* was appointed and required to give bond for $25,000.

The appointment of Philip Pollack receiver in the instant case was wholly without authority of law, and the order of the court entered of record appointing him as such is absolutely void. For this reason said order is reversed. All concur.