ROBERT B. DUNN v. THE ALTON RAILROAD COMPANY, Appellant.— 104 S. W. (2d) 311.

Division One, April 21, 1937.

*Jones, Hocker, Gladney & Jones, Lon O. Hocker* and *Arnot L. Sheppard* for appellant.

*N. Murry Edwards* for respondent.

GANTT, J.—Action for personal injuries sustained by plaintiff, a passenger on defendant's train from St. Louis to East St. Louis. The negligence submitted to the jury was an open vestibule door and sudden and unusual movements, which it was alleged caused plaintiff to fall from the train. The answer was a general denial with pleas of contributory negligence and assumption of risk in that plaintiff was transported free on condition that he assumed all risk of injury. In substance the reply was a general denial. Judgment of $15,000 and defendant appealed.

The first judgment for $5000 was reversed and cause remanded by the Court of Appeals for error in an instruction. [88 S. W. (2d) 224.] For a complete statement of the facts refer to that opinion. It is contended that the court should have directed a verdict for defendant. The pertinent facts follow:

Although plaintiff resided in East St. Louis he was in the service of the Illinois Central Railroad Company as flagman on a train from St. Louis to Cairo and return. He had a pass on trains running between St. Louis and East St. Louis and usually, on returning from Cairo, was a passenger on defendant's train from St. Louis to East St. Louis.

On the morning in question he was in next to the last coach of defendant's train. Lucas G. Marberry, baggageman on the Illinois Central train from St. Louis to Cairo, was seated immediately in front of him. Plaintiff testified he discovered that he did not have his pass and so informed Marberry, who laughed and said: "Either walk or pay your fare."

Marberry testified that he had no recollection of plaintiff so informing him; that he had no conversation with plaintiff about his transportation; that he was reading a newspaper and did not see plaintiff pay any railroad fare.

In explanation plaintiff testified that on last leaving home he rode to St. Louis in an automobile driven by his wife; that on crossing the bridge he unintentionally gave the railroad pass to her in the folder containing the bridge pass, and that he paid the conductor thirty cents fare from St. Louis to East St. Louis.

In this connection Minnie M. Dunn, plaintiff's wife, testified that on the morning in question she drove the automobile to the station in East St. Louis to meet plaintiff; that she looked for the bridge pass before leaving home and did not find it; that on the way to the station she found the folder in the automobile pocket; that on opening it she found the bridge pass and railroad pass, which she exhibited to Mrs. Vivian Lasage who was in the automobile.

Mrs. Lasage testified that Mrs. Dunn exhibited the folder. However, she did not handle or read the pass; that she noticed the word "Bridge" and that attracted her attention; that she did not know what caused Mrs. Dunn to search for the pass; that Mrs. Dunn

only said she wanted her pass; that she (Mrs. Lasage) was not going across the bridge that morning and did not know that Mrs. Dunn intended to do so, but was under the impression that she also was not going across the bridge. It will be noticed that Mrs. Dunn did not explain her anxiety about the bridge pass.

On the question the conductor testified that he had a definite recollection of plaintiff exhibiting his pass for transportation; that on that trip across the river he did not collect a cash fare from St. Louis to East St. Louis, and that the cash fare was forty cents and not thirty cents.

On the question of negligence, the facts may be stated as follows: The train moved east across the bridge, down the approach and in a northeasterly direction to level ground at a point near Missouri Avenue, a street running east and west in East St. Louis. On crossing Missouri Avenue it made one or two slight curves to the north before stopping at the station, which is two hundred feet north of Missouri Avenue. On announcement of the station by the train-man, plaintiff testified that he went through the south door of the coach to the vestibule platform, and that as he attempted to step from said platform to the vestibule platform of the next coach, there were sudden, violent and unusual jars of the train which threw him through the open vestibule door to the ground on the west side of the track.

For defendant there was evidence as follows: The baggageman Marberry testified that he alighted from the slowly moving train at Missouri Avenue; that plaintiff followed him from the coach to the vestibule platform; that he did not see plaintiff "get off the train;" but shortly saw him on the ground just north of said avenue.

E. T. Russell testified that he was eighty years of age and a former employee of the Louisville & Nashville Railroad; that he was a passenger on the train, followed Marberry and plaintiff to the vestibule platforms and that plaintiff followed Marberry down the coach steps; that plaintiff fell in attempting to alight from the train moving four or five miles an hour, and that there was no sudden and unusual movement of the train.

Robert Lange testified that he was crossing watchman at Missouri Avenue and on duty on the day in question; that he saw a man alight from the train at Missouri Avenue; that plaintiff stepped from the train thirty or forty feet north of said avenue and fell, and that there was no sudden and unusual movement of the train.

Harry Carlisle testified that he was seventy-five years of age and a teamster; that at the time he was crippled and walking with a cane; that he was on the west side of the track as the train moved across the avenue; that he saw a man alight from the train and then another man walked down the steps "right behind the first man" and attempted to alight from the train; that "it looked as

if he stepped down and fell;" that "the second man fell twenty-five, thirty or thirty-five feet north of Missouri Avenue" and that he noticed no sudden and unusual movement of the train.

Peter V. Flaherty testified that he was towerman for the Terminal Railroad in the tower near the station; that he handled the switches and display signals for the movement of the train; that he directed the movement from the bridge approach to the station; that he was looking and saw no sudden and unusual movement of the train; that he did not see anyone alight from the train; but as the rear coach straightened out he saw a man stumble and fall; that he only saw one man stumble and fall.

Wm. R. Patrick testified that he was section foreman for the Terminal Railroad; that on the morning in question he was preparing to work at the Missouri Avenue crossing; that as the train crossed the avenue he was on the west side of the track; that he saw a man alight from the train at the crossing and saw another man alight from the train about fifty or sixty feet north of the crossing; that the second man came down the steps of the coach and reached for the handle bar, missed it and fell; that the train was moving ten or twelve miles an hour and that he noticed no sudden and unusual jar of the train.

John Compton testified that he did maintenance work for the Western Union Telegraph Company; that he was on the station platform at the time plaintiff was injured; that he saw a man alight from the train at the crossing and saw another man walk down the steps and "it looked like" he stepped from the train, stumbled and fell.

Roy O. Chaddon testified that he was flagman on the train; that on calling the station he returned to the vestibule platform; that he saw plaintiff on the bottom step of the coach in the act of alighting from the train; that plaintiff was facing the inside of the coach; that he had hold of the handle bar with his grip in his hand; that he missed the grabiron with the other hand; that he swung around between the vestibule platforms and out again, and then fell to the ground; that there was no sudden and unusual movement of the train at the time he called the station, or thereafter.

Charles Thompson testified that he was a clerk for the Southern Railway and on the vestibule platform of the rear coach at the time plaintiff was injured; that plaintiff was on the lower step facing inside with a grip in his left hand; that he was holding to the grabiron in a position to alight, which he did in the regular manner; that the train was moving four or five miles an hour and there was no jar or jolt of the train.

The engineer, fireman and conductor testified that there was no

sudden and unusual movement of the train as it moved from the bridge approach to the station.

Wyman Shingleton testified that he formerly was a railroad engineer for the Illinois Central; that he had known plaintiff for seventeen years and was in a hospital with him; that plaintiff said he alighted· from the train with a traveling bag and was injured.

Riley O'Dell testified that he was employed by the Illinois Central and roomed in the hospital with plaintiff; that plaintiff said he intended to alight at the crossing; that he walked down the steps and "lost hold, hit the rail and broke his leg;" that he was in the habit of alighting at the crossing because his wife met him, and that he was riding on a pass.

H. A. Curtis testified that he was conductor for the Illinois Central; that he had known plaintiff for twenty years; that he met plaintiff in the hospital and plaintiff said "he got off at the crossing and stepped on something and broke his ankle."

Plaintiff denied that he made said statements to Shingleton, O'Dell and Curtis.

Thus it appears that the weight of the evidence was overwhelmingly in favor of defendant. The action of the trial court in sustaining the verdict is not understandable. Obviously, either the plaintiff is guilty of willful perjury or the numerous witnesses for defendant are guilty of willful perjury. As yet we have not ruled that a judgment on such a verdict should be reversed and the cause remanded.

Even so, defendant contends that plaintiff's testimony with reference to the alleged fall from the train is contrary to physical law, and for that reason the judgment is not supported by substantial evidence. On the question plaintiff testified that the train was moving north as he walked south; that he attempted to step from the vestibule platform to the vestibule platform of the next coach; that as he did so he felt an application of the brakes equal to an emergency; that said application threw him south; that the next jar threw him north; that the train then moved on a curve to the east and tilted to the west, throwing him through the open vestibule door.

It is clear that plaintiff could not have been thrown south by the application of the brakes. He would have been thrown north. Furthermore, the releasing of the brakes would throw him south instead of north. Furthermore, a movement on the curve would tend to throw him east instead of west. In other words, plaintiff's testimony is without substance and contrary to physical law. The judgment is not supported by substantial evidence. [Daniels v. Railway, 177 Mo. App. 280, 164 S. W. 154; Scroggins v. Railway, 138 Mo. App. 215, 120 S. W. 731; Crenshaw v. Public Service Co., 52 S. W. (2d) 1035, l. c. 1039; Alexander v. Railway, 289 Mo. 599, 233 S. W. 44,

l. c. 50; Cadwell v. Wilson Stove & Mfg. Co., 238 S. W. 415, l. c. 418.]

But plaintiff argues that the ruling of the Court of Appeals on the question is the law of the case.

"The general rule is that matters decided on one appeal will be considered settled on a second appeal in the same case." [Murphy v. Barron, 286 Mo. l. c. 400, 228 S. W. 492.] However, there are exceptions to the rule. If a mistake of fact has been made on the first appeal, or the decision on said appeal is an injustice to the rights of parties, corrections will be made on the second appeal. [Mangold v. Bacon, 237 Mo. 496, l. c. 517, 141 S. W. 650, 655; Seibert v. Harden, 319 Mo. 1105, 8 S. W. (2d) 905, l. c. 908.]

The judgment should be reversed. It is so ordered. All concur.