HEDWIG MAHL v. J. F. TERRELL, W. L. TERRELL and HENRY W. KIEL, Trustee for ST. LOUIS PUBLIC SERVICE COMPANY, Defendants, HENRY W. KIEL, Trustee for ST. LOUIS PUBLIC SERVICE COMPANY, Appellant.—111 S. W. (2d) 160.

Division Two, December 17, 1937.*

*NOTE: Opinion filed at the May Term, 1937, August 26, 1937; motion for rehearing filed; motion overruled at September Term, December 17, 1937.

16

*T. E. Francis, B. G. Carpenter* and *Wm. H. Allen* for appellant.

*E. McD. Stevens, John J. Nangle, George Gantner* and *Harry, S. Rooks* for respondent.

WESTHUES, C.—This is an action to recover damages for per-sonal injuries alleged to have been sustained as the result of a col-

lision between a service car and a street car, at the intersection of Manchester Road and the street car tracks immediately west of Dorthy Street, in St. Louis County, Missouri. Plaintiff obtained a judgment in the sum of $25,000 against all of the defendants. They were: J. F. Terrell, W. L. Terrell, and Henry W. Kiel, trustee for the St. Louis Public Service Company. Kiel, as trustee for the Public Service Company, owner of the street railway system, appealed.

The case was submitted to the jury under the humanitarian doctrine. The undisputed facts, as we gather them from the evidence, are: The collision occurred on July 11, 1934, at about six-thirty P. M. Manchester Road, at the point in question, is a four lane concrete highway, forty feet wide, running in an easterly and westerly direction. A double street car track crosses the highway in a north and south direction, somewhat northeasterly and southwesterly. About two hundred feet east of the intersection, on Manchester Road, is a sign "Railroad Crossing." To the south of the intersection and to the east of the tracks is a "stop" sign for street cars, and also a platform for passengers intending to board or leave the street cars. The service car that figured in the collision was a large Packard sedan, carrying seven passengers at the time of the collision. The service car was traveling west in the lane immediately north of the center line of Manchester Road and the street car was traveling north on the east track. The service car struck the street car near the rear end, derailing it. The service car swerved to the left just before the collision and the rear end of the car skidded into and struck the street car. The glass in a number of the windows of the street car was shattered. Two of the passengers in the service car were killed and a number of the others were seriously injured.

Plaintiff's witnesses testified that the street car stopped south of the highway, then moved slowly across it, beginning at a speed of about two miles per hour and gradually increasing to about six or seven miles per hour at the time of the collision. Plaintiff's witnesses testified that the service car was traveling at about twenty-five or thirty miles per hour; that a light rain had fallen just before the collision; that there was a slight incline toward the tracks on Manchester Road. Plaintiff testified that when the service car reached a point about thirty feet from the car tracks she felt the application of the brakes, then a swerve to the left. She testified the road was clear ahead of her at the time the brakes were applied; that she fainted before the collision and remained unconscious for some time after the collision. She was seriously injured. A police officer testified that there were marks on the concrete to the north of the center of the road, where the rear wheels of the street car had left the tracks. Another witness, who was a passenger in the service car, testified that the service car was traveling about thirty miles per

hour; that when it reached a point about sixty or seventy feet from the tracks he felt the application of the brakes; that the street car was standing still, at that time, south of the highway; that when the service car was about thirty feet from the tracks it began to swerve to the left and the rear end skidded around and struck the street car. Another witness, also a passenger on the service car, testified that the street car was standing still south of the highway when the service car was about eighty-five feet from the crossing; that the street car started across the highway at a speed of two or three miles per hour and had increased its speed to about seven or eight miles per hour at the time of the collision; that when the service car was about sixty feet from the track it was going twenty or twenty-five miles per hour; that prior to the application of the brakes it was traveling about thirty-five miles per hour. On cross-examination this witness testified that the brakes were applied just before the car was even with a building on the north side of the roadway. It was shown that this building was located more than 100 feet from the tracks. We have related substantially all of plaintiff's evidence, which plaintiff claims was sufficient to make a case for the jury, under the humanitarian doctrine, against the street car company. The driver of the service car, a defendant in the case, testified that he did not see the street car until he was 100 feet from the tracks; that the street car, at that time, was about five feet south of the concrete roadway; that he slowed the car down and was going about twelve miles per hour at the time of the collision.

Was the evidence sufficient to submit the case to the jury under the humanitarian doctrine? We think not. The physical facts in the case tell the story in no uncertain terms. The force of the impact, which derailed the rear trucks of the street car and shattered the windows of the car, leads us to conclude that plaintiff's witnesses did not overestimate the speed of the service car. It was conceded that the street car stopped south of the highway, then moved slowly across. It was struck near the rear vestibule, when north of the center line of the road. This street car was forty feet long. When the front end of the street car reached the center of the highway the service car must have been at least 120 feet or more east of the tracks. The testimony of plaintiff's witnesses, that the street car was at a standstill when the service car was from fifty to eighty feet from the tracks, and in front of the car when it reached the tracks, is so contrary to the physical facts that it must be rejected. [Dunn v. Alton Railroad Co., 340 Mo. 1037, 104 S. W. (2d) 311; Carner v. St. Louis-San Francisco Railroad Co., 338 Mo. 257, 89 S. W. (2d) 947, l. c. 950 (5); Tate v. Missouri-Kansas-Texas Railroad Co., Mo. 93 S. W. (2d) 873, l. c. 876 (2, 3); Alexander v. St. Louis-San Francisco Railroad Co., 289 Mo. 599, 233 S. W. 44, l. c. 50 (5).] If

the service car, traveling at thirty miles per hour, had been only sixty or ninety feet from the tracks, at the time the street car reached the south side of the concrete roadway, it would easily have passed ahead of the street car without a collision. That the witnesses were in error as to their estimates of the distance was shown when one witness was asked on cross-examination where the service car was with reference to a certain building at the time of the application of the brakes. The answer indicated that it must have been about 120 feet east of the crossing. Another witness testified that the street car was standing still, south of the highway, when the brakes of the service car were first applied. That is also so contrary to the physical facts that it must be rejected. We may also inquire, why did the operator of the service car apply the brakes while the street car was standing still south of the highway? Under the physical facts, as testified to by plaintiff's own witnesses, the service car must have been more than 220 feet from the tracks when the street car reached the concrete roadway. From that time to the time of the collision the street car moved at least forty-five feet, in the matter of time, about five seconds. The service car, approaching the tracks at thirty miles per hour, was in no apparent danger when 200 feet away at the time the street car began to cross the highway in the pathway of the service car. Neither was it in any apparent danger, traveling at that speed, when the front end of the street car reached the center of the highway, because at that time the service car must have been at least 120 feet east of the tracks. These estimates of distances and time are as favorable to the plaintiff as the evidence justifies. A car, at thirty miles per hour, travels forty-four feet per second; at two miles per hour, about three feet per second; at six miles per hour, about nine feet per second. Plaintiff's evidence, therefore, wholly failed to establish a case under the humanitarian doctrine. We have carefully read the evidence introduced by the defendants and it does not aid the plaintiff. Plaintiff's evidence failed to establish any fact, which could have been reasonably discovered by the motorman, that indicated any peril, or that the driver of the service car would be unable to stop his car, or that he did not intend to do so. Respondent in her brief baldly asserts that the motorman could have, by the exercise of ordinary care, discovered the service car and its occupants in peril in time to have avoided the collision. This is followed by the assertion that the motorman could have stopped the street car after the service car began to skid toward the tracks. The physical facts, as testified to by plaintiff's witnesses, conclusively showed that when the service car began to skid toward the tracks the motorman had passed the center of the intersection, in fact, he had passed the point of collision. The car, as the witnesses testified, swerved and skidded when the driver attempted to turn to the left and pass to the rear

of the street car. Had the motorman stopped the car at the time the service car began to skid the collision would have occurred nevertheless. The only difference would have been that the street car would have been struck nearer the center. It must be remembered that the street car was forty feet long.

A case cited by respondent, Jordan v. St. Joseph Ry., Light, Heat & Power Co., 38 S. W. (2d) 1042, l. c. 1044, Id., 335 Mo. 319, 73 S. W. (2d) 205, presented an entirely different state of facts. The motorman in this case, under the circumstances, had the right to assume that the service car would stop unless there was some fact, the motorman could have discovered by the exercise of ordinary care, which indicated that the driver of the service car did not intend to, or could not stop. No such evidence was produced. [Elkin v. St. Louis Public Service Co., 74 S. W. (2d) 600, l. c. 604 (9, 10), 335 Mo. 951, l. c. 957.] We have repeatedly ruled that "imminent peril" means something more than a probability that injury may result. [Ridge v. Jones, 71 S. W. (2d) 713, 335 Mo. 219, l. c. 225, 226, 227, and cases there discussed; Ziegelmeier v. East St. Louis & Suburban Ry. Co., 330 Mo. 1013, 51 S. W. (2d) 1027; Wallace v. St. Joseph Ry., Light, Heat & Power Co., 336 Mo. 282, l. c. 289, 77 S. W. (2d) 1011; State ex rel. Vulgamott v. Trimble, 300 Mo. 92, l. c. 109, 253 S. W. 1014, l. c. 1019. Certainly the motorman in this case was not required to anticipate that a car two hundred feet or more from the tracks, traveling at thirty miles per hour, was not going to stop. If so, street car operators could not move their cars across the highway for hours during the busy periods.

There being no evidence in this case that the motorman of the street car could have, by the exercise of ordinary care, discovered that plaintiff was in a position of peril, the judgment against the appellant street car company must be reversed. It is so ordered. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.

*NOTE: Opinion filed at the May Term, 1937, August 26, 1937; motion for rehearing filed; motion overruled at September Term, December 17, 1937.