HENRY R. HUNT, Appellant, v. CHICAGO, MILWAUKEE, ST. PAUL & PACIFIC RAILROAD COMPANY, Respondent, No. 40890—225 S. W. (2d) 738.

Court en Banc, December 12, 1949.

Rehearing Denied, January 9, 1950.

1090

*William C. Reynolds, Paul C. Sprinkle, William F. Knowles* and *Sprinkle & Knowles* for appellant.

*E. R. Morrison, Homer H. Berger, Randolph P. Rogers, Jr., Martin J. Purcell* and *Morrison, Nugent, Berger, Hecker & Buck* for respondent.

TIPTON, J.—An opinion in this case was prepared by one of our commissioners but we were unable to agree with the results he reached. However, his statement of facts correctly portrays the record and we adopt it.

"Henry R. Hunt's property, twenty-three acres in Clay County, fronts on the railroad's right of way. As he was driving over the railroad crossing from his property in May 1945 his 1937 Ford coupe was struck by the tender of a work train and he was injured. Upon the trial of his action for damages for his injuries a jury awarded him $15,000. The plaintiff pleaded and offered proof of specific acts of primary negligence and negligence under the humanitarian doctrine in failing, in the circumstances, to signal and to slacken speed but his cause was submitted upon the single charge

of failure to slacken speed after the ▮▮▮ plaintiff was in a position of inextricable, discoverable peril. Upon the defendant's motion, the trial court set the verdict and judgment aside and entered judgment for the railroad for the specified reason that 'there was no evidence from which the jury might fairly conclude that the speed of defendant's train could have been slackened sufficiently to have prevented the collision * * *.' The plaintiff contends that it was error for the trial court to so rule and, in any event, that the judgment should not be affirmed but reversed and remanded so that he may submit his cause upon other assignments of negligence.

"The plaintiff drove from his house to a gate about fifty feet from the north rail of the railroad track. He opened the gate and drove through so that the back end of the automobile was eight or ten feet from the open gate and the front end of the automobile ten or twelve feet from the north rail. After shutting the gate he got upon the running board of his car and looked both ways but did not see or hear a train. He said that brush and tall weeds along the right of way obstructed his view to the west and he could see but seventy-five feet up the tracks. He proceeded in low gear and 'just about the time the front wheels got to the north rail I at that time saw some cars coming toward me from the west.' His car was then moving four or five miles an hour and the work train was about 100 feet from the crossing, traveling twenty to twenty-five miles an hour and he immediately increased his speed to about ten miles an hour. He said: 'I knew I didn't have time to stop and back up. The only chance I thought I had was to get across. * * * I had got across the track and the right front corner of the box car (tender) caught the back of my car right above the right rear fender and the turtle shell.' He testified that the speed of the train did not slacken or diminish between the time he first saw it 100 feet away and the time his car was struck.

"The engine crew testified that they first saw the plaintiff when the train was about 100 feet from the crossing. There was no direct evidence, expert or otherwise, as to the rate the speed of the train could have been reduced at any speed. The engineer testified, however, that when the train was 100 feet from the crossing he saw the speed of the plaintiff's car increase and he immediately applied the emergency brakes. He testified that he did everything he could as quickly as he could but, nevertheless, the tender struck the car. He testified that the speed of the train would diminish as soon as the emergency brakes were applied but he 'couldn't say how much.' All he would say was 'It began to take hold some. I couldn't state how much.' He said that the brakes began to take hold between the 100 feet and the crossing but as to the exact distance and how much the speed of the train was reduced, 'I wouldn't say. It was just a matter of seconds. I couldn't tell you. * * * It had begun to slow down.

\* \* \* I said it started to slow up.' The train traveled about 150 feet beyond the crossing before it stopped and the plaintiff's automobile was turned around and pushed thirty-five or forty feet before it was thrown clear of the track.''

Upon these facts and the inferences reasonably drawn from the circumstantial evidence, the appellant contends the speed of the train could have been sufficiently diminished to have avoided the collision and, therefore, he made a submissible case for the jury. He contends that as his car approached the north rail at a speed of four or five miles an hour, accelerated to ten miles an hour at the time of the collision, with the train 100 feet away, he needed but one-fourth of a second to travel the three feet to safety. He testified that the speed of the train was not diminished in the 100 feet and this fact, together with the fact that he needed but a quarter of a second to escape, demonstrates that the speed of the train could have been sufficiently diminished, and the fact that it was not so diminished constitutes negligence under the humanitarian doctrine. He contends that under the facts and circumstances his case is governed by Treadway v. United Railways Co., 300 Mo. 156, 253 S. W. 1037; Dutton v. Kansas City Terminal Ry. Assn., 316 Mo. 979, 292 S. W. 718; Gann v. C. R. I. & P. Ry., 319 Mo. 214, 6 S. W. 2d 39; Smith v. Thompson, 346 Mo. 502, 142 S. W. 2d 70, and other similar cases. The respondent contends that there is no testimony or circumstantial evidence from which the jury could find that the speed of its train could have slackened sufficiently to have permitted the appellant's car to travel the remaining distance to a point clear of the train, and that appellant's case falls within the rule of law announced by Taylor v. Missouri, K. & T. R. Co., 357 Mo. 1086, 212 S. W. 2d 412; Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S. W. 2d 764; Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S. W. 2d 696; Flint v. C. B. & Q. R. Co., 357 Mo. 215, 207 S. W. 2d 474; Wolverton v. Kurn, 348 Mo. 908, 156 S. W. 2d 638, and other similar cases.

There is no evidence of the time that must be allowed for the engineer to have comprehended the danger of a collision, for his muscles to have responded to his will, for the brakes to have taken hold and for the speed of the train to have been reduced to such a degree as to have prevented a collision. Appellant's theory ignores these facts but his theory is that when the engineer first saw the appellant's automobile the train was 100 feet away from the crossing, and the engineer testified the train did slow up some before it reached the crossing, but how much he could not say. He says that these facts coupled with the fact that the appellant testified the speed of the train had not been decreased before the collision show that only a slight slackening of the train would have allowed time for the automobile to have crossed in safety. He contends that these facts show

that he needed only one-fourth of a second more for his automobile to have crossed the track. He testified that as he approached the track the speed of his car was four or five miles an hour, but he accelerated his speed to ten miles an hour at the time of the collision. We take judicial notice that the standard gauge of railroad track is 4 feet, 8½ inches. We know that trains are wider than the track, but how much wider we do not know and the record fails to show. Taylor v. Missouri, K. & T. R. Co., supra. So we do not think that under the facts of this case we can say the evidence justifies the conclusion that the appellant only needed one-fourth of a second more time to pass in safety.

But conceding that appellant needed only one-fourth of a second to cross the track safely as he contends, yet such contention fails to take into account the reaction time of the engineer to comprehend the danger, for his muscles to respond to his will and for the brakes to take hold before the train could start to slacken. The best that can be said of appellant's theory is that he might have had time to have crossed in safety. "The trouble is that '*might* have had time to cross' is not enough, because it leaves the matter to speculation and conjecture. What is required to warrant a finding of humanitarian negligence (of the engineer) is evidence of facts from which it would be a reasonable inference that 'the wagon [automobile] *could* have had time to cross the tracks' and beyond the overhang of the engine [train]." Wolverton v. Kurn, supra, S. W. l. c. 640. The record fails to disclose any reasonable inference that the train could have slackened its speed to have prevented the collision. This case cannot be distinguished frm the case of Taylor v. Missouri, K. & T. R. Co., supra, and the Wolverton case, supra.

The cases relied upon by appellant are distinguishable from the facts in the case at bar. In those cases there was positive testimony or facts and circumstances from which it could readily be inferred that the train or car could be either stopped or the speed slackened sufficiently to have avoided the injury.

For instance, in the Treadway case, supra, there was positive testimony that the motorman could have stopped the car in 50 or 60 feet.

In the Dutton case, the plaintiff's truck lacked one foot of clearing the crossing. The evidence showed that the train crew could have seen the crossing 600 feet away. The engineer testified that he had an emergency brake for a quick stop but he did not use it, nor did he attempt to stop until after the collision. Then the train was stopped within 400 or 500 feet. So there is evidence that the train could have been stopped before the collision, and if so it naturally follows that the speed of the train could have been slackened sufficiently to let the car go one foot further and thus have avoided the collision.

In the Gann case, supra, there was testimony that the engine was 100 to 150 feet away when the plaintiff's truck was stalled on the track. Yet there was positive testimony that the train could have been stopped within 25 or 30 feet with the use of an emergency brake, but the testimony showed that it was not used. After the truck was started again it almost escaped being hit by the train.

In Smith v. Thompson, supra, it took the truck 10 to 11 seconds to span the 30 to 33 feet to cross the track. The train at its sustained speed of 55 miles an hour traveled 807 to 887 feet in that length of time. The train was stopped within 500 feet after the collision. Of course, it follows that if the brakes had been applied at 807 to 887 feet from the crossing the collision would not have taken place, or even at a closer distance it could have been slackened enough to permit the truck to then travel 3 or 4 feet further to a place of safety.

In the case of Shelton v. Thompson, 353 Mo. 964, 185 S. W. 2d 777, there was evidence by both defendant and plaintiff as to the distance in which the train could have been stopped. Also, the plaintiff's testimony showed how much the speed could have been reduced in 100 feet.

Appellant says there can be no doubt that we recognize ''the rule wherein a plaintiff almost escapes,'' and quotes from our case of Steuernagel v. St. Louis Public Service Company, supra, l. c. 698:

''This is not a case of 'almost escaping' so that a slight slackening of speed would have allowed the car to clear the tracks. Under these circumstances no evidence of slackening is necessary. See Gann v. Chicago, R. I. & P. R. Co., 319 Mo. 214, 6 S. W. 2d 39; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. 2d 864; Smith v. Thompson, 346 Mo. 502, 142 S. W. 2d 70.''

We do not believe, after a careful reading of that opinion, that it approves the rule that no evidence is required in such case. In that case the appellant contends that her case came within the above quotation. We held it did not, without discussing whether we approve the rule contended by that appellant. But if the language used is so interpreted by the bar of this state to mean that no evidence, either direct or circumstantial, is required, then to that extent it should not be followed.

So we see the cases relied upon by appellant are distinguishable from the cases at bar and we hold the evidence insufficient to make a submissible case under the humanitarian doctrine.

Appellant further contends that the trial court erred in entering a judgment in favor of respondent because the action of the trial court violated a rule of law which he contends is ''to the effect that a court should never enter a judgment for a party unless it is quite clear from all the evidence that that party could not make any kind of a submissible case for the jury.'' He cites the following

cases: Rutledge v. Missouri Pacific Railway Company, 123 Mo. 121, 27 S. W. 327; Scott v. Davis, 216 Mo. App. 530, 270 S. W. 433; Byrne v. Prudential Ins. Co., 88 S. W. 2d 344; Patzman v. Howey, 340 Mo. 11, 100 S. W. 2d 851; Smith v. Terminal Railroad Association, 160 S. W. 2d 476 (Mo. App.). In the last cited case, that court correctly stated the law as follows, l. c. 479:

"The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses."

We do not think the facts in this case come within the rule of law announced by the cases just cited. In the first place, the appellant's petition alleged several grounds of primary negligence as well as the humanitarian negligence. Yet, he ▮▮▮ chose to abandon all grounds of primary negligence and go to the jury solely on the humanitarian negligence. Nor is there the slightest suggestion that the facts were not fully developed. We think this case is governed by the rule announced by this court in the case of Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S. W. 2d 835, l. c. 851, wherein we said:

"* * * where a party has got the benefit of presenting his evidence on *all* his pleaded assignments to the jury, and of thereby impressing their minds with the magnitude of his adversary's dereliction; and then deliberately chooses to restrict the submission to one issue because he believes that is to his advantage—such a course is more a matter of legal strategy than of misadventure. As an illustration, if a party permits incompetent evidence to go to the jury without objection or similarly allows an unqualified juror to serve, gambling on the result, he will not thereafter be heard to complain."

See, also, the case of Lance v. Van Winkle, 358 Mo. 143, 213 S. W. 2d 401.

Consequently, nothing appears in the record before us to warrant or support an order remanding the case for a new trial.

The judgment is affirmed. All concur except *Leedy, J.*, who dissents.