**EAST v. McMENAMY.**

No. 43929.

Supreme Court of Missouri.

Division No. 2.

March 8, 1954.

Rehearing Denied April 12, 1954.

Granville L. Gamblin, St. Louis, Alvin S. Juergensmeyer, Warrenton, for appellant.

Robert V. Niedner, Paul F. Niedner, Niedner & Niedner, St. Charles, for respondent.

TIPTON, Presiding Judge.

This is an action brought by appellant to recover for the wrongful death of her husband, which resulted from the collision of an automobile driven by deceased and a truck driven by respondent. Appellant sought recovery only under our humanitarian doctrine. At the close of appellant's evidence, the trial court directed a verdict for respondent.

Verdayne Schacher testified that he was a member of the Missouri State Highway Patrol, stationed at Wentzville, Missouri. He testified that on September 1, 1952, he went to the scene of an accident two or three miles east of Wentzville, on a new stretch of Highway 40 where it intersects with a county road leading to Gilmore, Missouri; that when he arrived there an Oldsmobile 88 was in the center of the highway and an International truck was lying on its right side on the north shoulder of the highway, headed west; that the occupants of the Oldsmobile apparently were dead; that respondent was at the scene;

that the witness measured the skid marks made by the Oldsmobile; that there were 41 feet of brake marks and 24 feet of skid marks before the Oldsmobile hit the back of the truck; that there were 4 skid marks and that they were all in the north lane; that the right hand skid mark was about a foot north of the center line of the highway, in fact, all of the skid marks were in the north lane and were more or less parallel to the center line; that the skid marks came to an end just west of the west edge of the county road and it was that point which he determined to be the point of collision, judging by the debris and glass he found there; that the collision .occurred in the north lane; that he measured the highway and it was 24 feet wide; that the highway was practically level; and that respondent stated to him that "I was making a left-hand turn and gave a signal. The first thing I know there was a big explosion and I found myself rolling around in the truck."

The appellant read certain statements from respondent's deposition. They were to the effect that as he approached the intersection he gave a left-hand turn signal; that he looked through the rearview mirror and saw a car traveling east; that this car was quite a distance back of respondent; that as he approached the intersection and began to make the turn, he glanced in the rearview mirror again and saw the car; that at the time he was making this turn north, he was struck by the automobile; that the front left side of his truck was even with the west edge of the county road intersection but on the concrete pavement, and his right front wheel was 5 feet north of the center line. He also stated in this deposition that he had been driving 18 miles an hour but slowed his truck to 10 miles an hour while making the turn.

There was testimony that Highway 40 at this place was new and was constructed of concrete, that the pavement was dry, that the tires on the automobile were practically new, that its brakes were in good condition, and that both respondent and deceased were driving east.

Joseph J. Feuchter testified on behalf of appellant. He stated that he received his engineering education at Cooper-Union Institute of Technology in New York; that he had been an engineer for 28 years; that for 19 years he had specialized in traffic and transportation; that he had acted as a consultant to several municipalities and the State Highway Department; and that he had had experience with and engaged in research activities with regard to speed of motor vehicles, including the acceleration and deceleration thereof.

This witness was asked if he could tell how long it would take an automobile to make skid marks of 65 feet, taking into consideration the facts that the surface of the highway was new concrete, that the highway was fairly level, that the tires on the automobile were new or fairly new, that the brakes on the automobile were in good condition, that the automobile collided with the rear end of a truck that was turning into the north lane, and that from the point of collision and impact the skid marks extended westerly 65 feet. His answer was that the time elapsed in making the skid marks would be 2.85 seconds.

On cross-examination this witness testified that it would not make any difference how fast the automobile was traveling at the time it started to skid; that an automobile going 100 miles an hour, commencing to skid, and skidding 65 feet, and an automobile going 50 miles an hour, commencing to skid, and skidding 65 feet, would take the same number of seconds in making the skids. He further testified that it would not make any difference whether an automobile was stopped by reason of the friction of its tires on the concrete or was stopped at the end of the skid by striking an object. He also testified that an automobile going 100 miles an hour, skidding 65 feet and hitting an object, would cover that 65 feet in the same time as an automobile going 50 miles an hour, skidding 65 feet and stopping by the friction of its tires on the concrete pavement. The witness also testified that the automobile in question traveled at an average rate of 15.9 miles an hour in skidding the 65 feet; that

the speed during the time of the skid was not constant; that during the first part of the skid, the car was going a great deal faster than 15.9 miles an hour; that at some place during the skid it was traveling exactly 15.9 miles an hour and that point was some point in the last quarter of the skid, "it would have to be down naturally near the stopping end of it."

The ultimate question before us is: Did the appellant's evidence make a case under the humanitarian doctrine? In ruling that question, it is our duty to give appellant the benefit of any and all facts and circumstances favorable to or tending to support her theory of the case, and exclude any fact or inference that is favorable to respondent. Steger v. Meehan, Mo.Sup., 63 S.W.2d 109; See v. Wabash R. Co., 362 Mo. 489, 242 S.W.2d 15. But, as respondent contends, this rule of law does not mean that the court is bound to accept without any evidence appellant's version of how the collision occurred, or permit the jury to speculate on how it occurred, when the only evidence presented in this case is not only beyond all reason but is, in fact, physically impossible. The rule that a plaintiff's evidence is to be taken as true only exists where the plaintiff's evidence is not impossible as opposed to the physics of the case and not entirely beyond reason. Where well established physical facts and common observations and experiences are in conflict with the testimony of a witness, his testimony in this respect does not constitute evidence and must be disregarded. State ex rel. Kansas City Southern Ry. Co. v. Shain, 340 Mo. 1195, 105 S.W.2d 915; Mahl v. Terrell, 342 Mo. 15, 111 S.W.2d 160; Freed v. Mason, Mo.App., 137 S.W.2d 673; Bauer v. Wood, 236 Mo.App. 266, 154 S.W.2d 356.

Mr. Feuchter's testimony was to the effect that deceased's automobile consumed 2.85 seconds in making the 65 feet of skid marks on the concrete pavement of Highway 40, that the automobile would have consumed 2.85 seconds in making the 65 feet of skid marks, regardless of the speed at which the automobile was traveling when it started skidding, and this fact is true even if it did or did not collide with a truck at the end of the skid. That is to say, the automobile was stopped at the end of 65 feet because it struck a truck but the time consumed would have been the same if the automobile had stopped in 65 feet solely because of the friction of the tires' skidding on the pavement. The formula that this witness used, as set out in the evidence, is the same under all of the various conditions above mentioned. He further testified that the automobile in traveling this 65 feet in 2.85 seconds traveled at a rate of 15.9 miles an hour; that the average rate of speed was not constant; and that at some point in the last quarter of this distance the automobile traveled exactly 15.9 miles an hour, and after that point was reached at a slower rate of speed. When we consider these facts with the further facts that the truck was knocked over on its side and found on the north shoulder of the highway headed west, and the automobile the deceased was driving was demolished with parts of the engine and dashboard found in the rear part of the automobile, we are constrained to hold that this witness' evidence is contrary to physical facts and in conflict with common observations and experiences of men. It, therefore, does not constitute evidence and must be disregarded. Such evidence is no more than mere conjecture and speculation.

For the purpose of this case this court will assume that a jury could find that the deceased was in a position of peril during the time his automobile was skidding the 65 feet and, in addition thereto, three-fourths of a second reaction time, yet, with witness Feuchter's testimony eliminated, there is no evidence showing the length of time deceased was in a position of peril.

A defendant is under no duty to do anything under the humanitarian rule until a plaintiff comes into a position of imminent peril. Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961; Paydon v. Globus, Mo.Sup., 262 S.W.2d 601. A likelihood or a bare possibility of injury is not sufficient to create imminent peril. It

is the duty of appellant to establish, by substantial evidence of probative value drawn therefrom, the length of time the deceased was in a position of peril. Evidence that is merely speculative, a guess or conjecture is not sufficient. Paydon v. Globus, supra.

■ There is no evidence that after deceased came into a position of peril that there was any time for the respondent, with the means at hand, to avert the impending accident. Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482; Hunt v. Chicago, M. St. P. & P. R. Co., 359 Mo. 1089, 225 S.W. 2d 738; Young v. St. Louis Public Service Co., 250 S.W.2d 689. We are of the opinion that under this record the evidence was insufficient to submit the humanitarian issue to the jury.

The question now presents itself as to what disposition should be made of this case.

■ "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses." Smith v. Terminal R. R. Ass'n of St. Louis, Mo.App., 160 S.W.2d 476, loc. cit. 479.

See, also, Patzman v. Howey, 340 Mo. 11, 100 S.W.2d 851; Hunt v. Chicago, M. St. P. & P. R. Co., supra; Stone v. Farmington Aviation Corp., Mo.Sup., 253 S.W.2d 810.

The case of Cudney v. Midcontinent Airlines, Mo.Sup., 254 S.W.2d 662, was an action for personal injuries submitted under the res ipsa loquitur doctrine. The jury returned a verdict for defendant. We held that plaintiff was not entitled to a res ipsa loquitur submission of her cause, but since there were some circumstances from which inferences of specific negligence might be drawn, we reversed the judgment and remanded the cause so that the plaintiff might plead specific negligence.

In the record before us, there is some evidence that respondent gave a left-hand turn signal, but there is no evidence from which the conclusion can be drawn that he used the highest degree of care in looking both straight ahead and laterally as he started to make the turn described in evidence. Hornbuckle v. McCarty, 295 Mo. 162, 243 S.W. 327, 25 A.L.R. 1508; Brown v. Toedebush Transfer, 354 Mo. 611, 190 S.W.2d 239.

■ It may be that from the evidence inferences of specific negligence may be drawn, therefore, the judgment is reversed and the cause remanded so appellant may plead specific negligence, if she is so advised.

All concur.