**Rush QUINN, Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and Sylvester Woolfolk, Appellants.**

No. 46369.

Supreme Court of Missouri,

Division No. 2.

Dec. 8, 1958.

William J. Hormberg, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for joint appellants St. Louis Public Service Co. and Sylvester Woolfolk.

William C. Martin, St. Louis, for respondent.

STORCKMAN, Presiding Judge.

Plaintiff sued for $25,000 as damages for personal injuries alleged to have been sustained while a passenger on a motorbus of the defendant, St. Louis Public Service Co., herein sometimes referred to as the transit company. The bus was being driven and operated by the defendant Sylvester Woolfolk, an employee of the company. The plaintiff also joined as a defendant, Roy Ross, the driver of an automobile which collided with the motorbus at a street intersection in the City of St. Louis. The plaintiff dismissed with prejudice as to the defendant Ross at the close of plaintiff's case. The verdict and judgment were in favor of the plaintiff and against the transit company in the sum of $2,000, but in favor of the defendant Woolfolk. None of the parties filed a motion for new trial, but the transit company filed an after-trial motion for judgment notwithstanding the verdict and in accordance with its motion for a directed verdict. The trial court within thirty days after rendition of the judgment, of its own motion, granted all the parties a new trial and overruled the transit company's motion for judgment. The defendant St. Louis Public Service Company and its driver, the defendant Woolfolk, have appealed.

Plaintiff's petition alleged specific negligence as to all of the defendants. It charged that the defendant transit company and the bus driver operated the bus at an excessive speed, failed to stop on the first appearance of danger, failed to maintain proper control of the bus, failed to maintain a proper lookout, failed to swerve the bus and thereby avoid the collision, and humanitarian negligence. With respect to the defendant Ross, the petition charged that

he failed to maintain proper control of his automobile, failed to stop at the first appearance of danger, failed to maintain a proper lookout and failed to observe an intersectional stop sign.

At the close of plaintiff's case, after the dismissal of the defendant Ross, the defendant transit company and its driver filed their motion for a directed verdict which was overruled. Evidence was then introduced on behalf of these defendants. All of the evidence in the case tended to show there was a collision between the bus and the automobile after which the bus ran a distance of about 20 feet and struck a wooden utility pole against which it came to rest.

Plaintiff chose to submit his case to the jury on the hypothesis that the bus driver was negligent in failing to control the bus after the collision with the automobile and in permitting it to strike the utility pole. His instruction on liability (which is not to be taken as a model) is as follows:

"If you find from the evidence that in the collision between the bus and the car, the bus driver was not negligent; and if you further find from the evidence that *subsequent to said collision the bus driver failed to exercise the highest degree of care to keep his bus under control and as a direct result thereof the bus struck the utility pole;* and if you further find from the evidence that Rush Quinn was a passenger on the bus in question and as a direct result of the bus colliding with the utility pole in question, while in the exercise of due care for his own safety, was injured, then your verdict should be for the plaintiff Rush Quinn and against the defendants." (Emphasis added.)

On this appeal the defendant transit company and its driver present these contentions: (1) the plaintiff failed to prove a submissible case against either of the defendants on the issue submitted; (2) the court erred in granting plaintiff a new trial against the defendant Woolfolk, in that the court failed to specify the grounds for granting a new trial and failed to show cause for granting a new trial; (3) the court erred in overruling defendant transit company's motion for judgment because its liability was dependent solely on the doctrine respondeat superior and the verdict was in favor of the defendant servant; and (4) the court erred in granting a new trial because the order was made without notice to the parties and an opportunity to be heard.

The plaintiff-respondent did not see fit to file a brief in this court and make an oral argument. Ordinarily a respondent is not required to file a brief. As stated in Fidelity Loan Securities Co. v. Moore, 280 Mo. 315, 217 S.W. 286, 288: "The law casts the laboring oar upon appellant, and respondent intrusts his oar (whether laboring or otherwise) to this court." If the trial court grants a new trial without specifying of record the ground or grounds upon which the new trial is granted, the presumption shall be that the trial court erroneously granted the motion for new trial and the burden of supporting such action is placed upon the respondent and he may be required to prepare and file the original brief. Supreme Court Rule 1.10, 42 V.A.M.S.; Missouri Crooked River Backwater Levee Dist. of Ray County v. Merrifield, 358 Mo. 915, 218 S.W.2d 110. It has been the policy of this court to encourage briefs and oral argument by both parties. When a party does not do so, he foregoes an opportunity to aid the court in arriving at a proper decision. Seldom are cases which reach the appellate courts so one-sided that the respondent can afford not to brief it. This is especially true where, as here, the contention is made that the trial court failed to specify the grounds upon which the new trial was granted, and the case presents complex procedural problems and important substantive questions.

Where a trial court of its own initiative orders a new trial, the order

granting the new trial must specify the grounds therefor. Section 510.370 RSMo 1949, V.A.M.S.; Supreme Court Rule 3.25. The order granting the new trial is as follows: "Within thirty days after verdict and on court's own motion, plaintiff and defendants, also, are granted new trial under ruling of Supreme Court of Missouri in Atterbury v. Temple Stephens Company, et al 181 S.W.2d 659." Thereafter on the same day the court denied the motion of the transit company for judgment.

In the Atterbury case, a corporate defendant and its manager were sued for personal injuries. The verdict and judgment were for the plaintiff and against the corporate defendant, but in favor of the defendant manager. The corporate defendant and the plaintiff appealed. The corporate defendant contended that it was exonerated by the verdict and was entitled to have judgment because it would be liable only under the doctrine of respondeat superior and the exoneration of the servant, ipso facto, exonerated the master. The plaintiff contending for a new trial as to both defendants urged that two forms of verdict given the jury on the trial court's own motion constituted reversible error because they were tantamount to an instruction that the jury was authorized to find in favor of one defendant and against the other. The court held that it was reversible error to give the jury these two forms of verdict, "absent request, consent or invitation, or absent evidence of negligence other than" by the store manager. 181 S.W.2d 661 [1]. The court held, however, that there was evidence from which the jury could find that plaintiff's injuries were caused by the negligence of a clerk who was not a party to the action and that the giving of these forms of verdict was not erroneous under the circumstances.

■ We assume that the trial court intended to specify the submission of the two forms of verdict, similar to those in the Atterbury case, as the grounds for a new trial. One of these permitted the jury to find in favor of the plaintiff and against the defendant St. Louis Public Service Company, but in favor of the defendant Woolfolk; the other form was for use if the jury found in favor of the plaintiff and against defendant Woolfolk, but in favor of the defendant St. Louis Public Service Company. However, we do not think the case falls within the rule announced in the Atterbury case because the record indicates that these forms of verdict were given to the jury without objection and by the "consent or invitation" of the parties. In Ruehling v. Pickwick-Greyhound Lines, 337 Mo. 196, 85 S.W.2d 602, 604 [4], the judgment was reversed and the cause remanded for error in the giving of such forms of verdict and the court stated: "The giving, by the trial court, of this form of verdict was in effect, and tantamount to, an instruction that they were authorized to make such finding and was apparently so understood by them and therefore misleading and prejudicial."

■ In the Ruehling case, the plaintiff objected and excepted to giving the forms of verdict to the jury. This is in keeping with our practice; the complaining party should be required to make known at the time the verdict forms are given to the jury his objection to the court's action in order to preserve the question for review. See § 510.210; § 512.160, subd. 1; Supreme Court Rule 3.23. The record shows no objection on that score.

Further it appears that these forms of verdicts were not inconsistent with instructions given on behalf of plaintiff and defendants. Therefore it may be said that the forms of verdict were given with consent or by invitation. The defendants' instruction No. 5, submitting sole cause, treats the liability of the two defendants as separable. It states that if plaintiff's injuries "* * * were not due to any negligence on the part of defendant, Sylvester Woolfolk, and defendant, St.

Louis Public Service Company, *or either of them,* as set out in Instruction Number One, then in that event plaintiff is not entitled to recover from the defendant Sylvester Woolfolk and defendant, St. Louis Public Service Company *or either of them,* and your verdict must be in favor of defendant Sylvester Woolfolk and defendant St. Louis Public Service Company."

This separable form of submission also appeared in plaintiff's instruction No. 4 on pre-existing injuries, which concluded, "* * * the plaintiff is entitled to recover damages for such condition or conditions as you may find and believe from the evidence in this case were caused to him by the negligence, if any, *of either or both of the defendants* in this cause." Where the parties by their instructions treated the case as if it were one in which a finding could be returned in favor of the defendant driver and against the defendant transit company, they should not be heard to contend that the giving of the verdict forms was not invited. The rule stated in the Atterbury case did not require the grant of a new trial under the circumstances existing in this case.

■ The procedural situation in this case is quite unusual in that the defendant St. Louis Public Service Company has appealed although the judgment against it has been set aside by the order for new trial. However the record indicates that if the company could not be completely relieved of liability, it was satisfied to let the judgment stand. The defendant Woolfolk, on the other hand, has been deprived of his judgment which was wholly favorable. Even though the new trial was ordered on the court's own motion, it was an order which neither defendant sought and constituted an order granting a new trial from which both defendants could appeal since they were aggrieved thereby. Section 512.020; Adair County v. Urban, 364 Mo. 746, 268 S.W.2d 801, 804 [4]; Stith v. St. Louis Public Service

Co., 363 Mo. 442, 251 S.W.2d 693, 695 [5], 34 A.L.R.2d 972.

■ Since the respondent has not shown that the appellants are not entitled to a review of the questions presented, and no reason being apparent on the record, we will consider the merits of the assignments of error. Atkinson v. Atchison, Topeka & Santa Fe Railway Co., Mo., 316 S.W.2d 556, 562 [6].

The first contention is that the evidence was insufficient to support the charge of negligence submitted, which was that the bus driver Woolfolk failed to use the highest degree of care to keep the bus under control after it collided with the automobile thereby permitting it to strike the utility pole.

Coleman is a north and south street and North Market runs east and west. Each is about 40 feet wide. At their intersection there is a traffic sign on Coleman requiring southbound vehicles to stop before entering the intersection. On the night of June 18, 1955, defendant's motorbus was traveling east on North Market carrying passengers from Busch Stadium to downtown St. Louis. Roy Ross was driving his automobile south on Coleman accompanied by friends, also on his way home from the ball park. The two vehicles collided in the southern part of the intersection and the bus then ran against a utility pole located near the southeast corner of the intersection.

The plaintiff was seated on the rear seat of the bus and other passengers were standing in the aisle. He could not see out to the front or to the side of the bus. He testified that the bus stopped suddenly, that he went forward striking his knee and the left side of his mouth on the seat in front of him and that he then went backwards striking his back, but he did not fall from his seat. The plaintiff did not know at the time that any automobile was involved and did not know what had happened until he got off the bus and saw it

was against the utility pole. He had no idea of the speed of the bus before the impact, did not hear the bus driver give any warning signal, did not see the bus swerve to the right or the left, and could not tell whether there was any change of the speed of the bus.

The defendant Ross testifying on behalf of the plaintiff stated that he stopped at the traffic sign on Coleman before entering the intersection. He saw no traffic and started across thinking all was clear. He was almost across North Market when he saw the lights of an eastbound vehicle which he later learned was a motorbus of the defendant transit company. The bus was about 10 feet from his auto when he saw it and was traveling in excess of 35 miles per hour. He was traveling about 5 miles per hour. He testified that at the time of the collision the front of his car was about 5 or 6 feet from the south side of the intersection and the bus hit his automobile on its right side. Ross testified he was at all times in the southbound lane of Coleman and did not hear any horn or other warning from the bus, nor any skidding of tires or squealing of brakes before the bus struck his car. Ross was rendered unconscious by the impact and his automobile was demolished by the force of the collision.

Plaintiff himself and the defendant Ross were the only witnesses who testified on the issue of liability. Neither of them contributed anything bearing on the ability of the defendant Woolfolk to control the motorbus after it collided with the automobile. Clearly there was nothing in plaintiff's evidence to support the issue upon which his case was submitted.

Two passengers and the defendant Woolfolk testified on behalf of the defendants with respect to the issue of liability. Defendant's evidence tended to prove that the Ross automobile was in the middle of Coleman Street and traveling in excess of 25 miles per hour, that he did not stop at the traffic sign before entering the intersection, that he did not decrease his speed and tried to pass in front of the bus, and that the left front of the bus collided with the right front of the automobile.

The defendant Woolfolk was the only witness who testified to the distance the utility pole was from the point of collision and his ability to stop the bus or control its direction after the collision. His testimony was that the utility pole was about 20 feet from the point where the bus and the automobile collided; that he applied his brakes when he first saw the Ross automobile, and at the time of the collision the motorbus was traveling about 10 to 12 miles per hour and had been further slowed to about 3 to 5 miles per hour when it hit the post. He testified that the minimum distance in which the bus traveling at 15 miles per hour could be safely stopped under the existing conditions was 45 feet. He was not asked the distance in which the bus could be stopped traveling at 10 miles per hour or any other speed in evidence. At 15 miles per hour, the bus would travel 22½ feet per second; at 30 miles per hour, 45 feet per second.

The only evidence in the case with respect to the driver's ability to control the course of the bus was this part of his examination: "Q. At the time of the collision with the automobile, then what happened to the bus? A. After the collision? Q. With the automobile, yes? A. Well, the bus, after the collision, after the automobile struck my bus, he struck it at an angle and causing the automobile to kind of flip around and hit the side of my bus with the side of his automobile. When he did that, the auto had hit my front wheels of my bus, spinned my steering wheel causing me to lose control, but I had applied the brake all the time, but I, by spinning the wheel, I couldn't turn the wheel back around soon enough. So, all that happened so sudden, to avoid hitting the telephone pole."

 The mere fact that the bus struck the utility post does not constitute evidence of negligent failure to control in

the circumstances of this case. As stated in La Pierre v. Kinney, 225 Mo.App. 199, 19 S.W.2d 306, 311 [5]: "A failure to take what it afterward appears would have been the safer action, in a given instance, is not evidence of inability to control, *in the absence of any evidence of an unsuccessful effort made to control in the manner alleged to have been called for under the circumstances, or of the failure to have proper control appliances.* The fact of the collision, which might have been due to other causes or neglects, is not by itself evidence of lack of control." (Emphasis supplied.) The plaintiff in the present case did not allege in his petition or hypothesize in his instruction the manner or means by which control could have been exercised under the circumstances.

The burden was upon the plaintiff to prove the facts and circumstances necessary to prove the issue of negligence submitted and the jury was so instructed. A jury's verdict cannot be based upon mere speculation or conjecture. Willey v. Fyrogas Co., 363 Mo. 406, 251 S.W.2d 635, 642 [7–9]. There is no substantial evidence from which it can reasonably be said that the defendant Woolfolk could have stopped the bus in the distance available, could have steered it so as to avoid hitting the utility pole, or could otherwise have controlled it more effectively.

The second and third contentions made by the defendants have been disposed of by what we have previously said. We believe there was a sufficient specification of the grounds upon which the new trial was granted although it would be better practice for the trial court to state the grounds directly. Nor do we think that the defendant St. Louis Public Service Company was entitled to judgment on the ground that it had been exonerated by the verdict in favor of its driver Woolfolk since the record shows that the verdict forms were given without objection and by consent and invitation by all the parties.

It appears from the record, however, that the order granting the new trial as to all parties would have to be set aside because it was made without reasonable notice to the parties and without affording them an opportunity to be heard. Hoppe, Inc., v. St. Louis Public Service Co., 361 Mo. 402, 235 S.W.2d 347, 23 A.L.R.2d 846. The defendant Woolfolk would be entitled to hold his verdict and judgment in any event. This leaves for determination the disposition of the appeal of the defendant transit company.

When the plaintiff elected to submit his case to the jury solely upon the bus driver's failure to exercise the highest degree of care to control the bus after the collision with the automobile, he abandoned all other allegations of negligence contained in his petition. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 95; Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692, 696.

The plaintiff alleged in his petition that his injuries were caused by the collision between the motorbus and the automobile; the fact that the bus struck the utility post was not mentioned. The plaintiff joined the automobile driver as a party defendant and voluntarily dismissed as to him at the close of plaintiff's case. All of this and the manner of pleading negligence and submitting the case indicates strategy rather than misadventure. As stated in Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 851: "* * * where a party has got the benefit of presenting his evidence on *all* his pleaded assignments to the jury, and of thereby impressing their minds with the magnitude of his adversary's dereliction; and then deliberately chooses to restrict the submission to one issue because he believes that is to his advantage—such a course is more a matter of legal strategy than of misadventure. As an illustration, if a party permits incompetent evidence to go to the jury without objection or similarly allows an unqualified juror to serve, gam-

bling on the result, he will not thereafter be heard to complain."

In view of this situation and since there is nothing in the record to suggest that the facts were not fully developed at the trial, we cannot justify a remand for a new trial as to the defendant St. Louis Public Service Company. Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738, 741-2 [3, 4]; Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401, 404 [10, 11]; Borrson v. Missouri-Kansas-Texas R. Co., supra.

Accordingly the order granting a new trial is reversed and the cause is remanded with directions to reinstate the verdict and judgment in favor of the defendant Woolfolk and to set aside the judgment in favor of plaintiff and to enter judgment in favor of the defendant St. Louis Public Service Company.

LEEDY, J., concurs.

EAGER, J., concurs in result.