**Marie HEGINBOTHAM, (Plaintiff) Appellant,**

**v.**

**Arthur GANN, (Defendant) Respondent.**

No. 30971.

St. Louis Court of Appeals.

Missouri.

Feb. 19, 1963.

Dorothy Scott Alloway, St. Louis, for appellant.

Wilbur C. Schwartz, St. Louis, William L. Mason, Jr., St. Louis, of counsel, for respondent.

GEORGE P. ADAMS, Special Judge.

Plaintiff-appellant prosecutes this appeal from a judgment in favor of defendant-respondent, entered in the Circuit Court of the City of St. Louis, pursuant to the verdict of a jury.

About 8:30 A.M. on January 22, 1958, while stopped at a stop sign on Midland Avenue at the south side of Olive Street Road in University City, plaintiff's car was struck from the rear by defendant's northbound car.

Earlier, as she was taking her daughter to school, plaintiff had experienced some icy pavement on Hanley Road and was using Midland Avenue as a "better" route home. She drove north on Midland and stopped at Olive Street Road to wait for traffic to pass so she could proceed north across Olive Street Road.

Her version of the accident is contained in this brief portion of her testimony:

"All I know is that I had been sitting there, I'm certain at least three minutes or more, waiting for a break in traffic so I could get through and there was a car turning off Midland going east on Olive I was watching, because I felt after that car passed, I might be able to get through, and next thing I knew I was holding on for dear life; my car just took off, and I knew I was going to hit the car turning in front of me. I don't know where the car came from—I didn't see it. All I know I just shot out and my ankles and wrist were swollen from holding the brake and steering because it came with such force, and I just didn't know where it came from. I didn't see the car."

On his way to work that morning, defendant, too, had experienced ice on several streets. As he drove north on Mid-land and when he was 45 to 50 feet back of plaintiff's car and driving 15 to 20 miles per hour, he noticed her car stopped at an automatic signal at Olive Street Road. He put his foot on his brake to stop his car, the car slowed down but when he was 15 feet back of plaintiff he "hit ice." The car started "picking up." He tried to swing his car into a filling station and as he "swung" the driver's side of his car—at the fender and door—hit the right rear of plaintiff's car and moved it forward.

Plaintiff claimed to have been injured but her injuries are not an issue on this appeal.

In her petition plaintiff pleaded (1) rear end collision negligence, (2) excessive speed, (3) failure to sound signal or warning, (4) failure to have his car under control, (5) failure to discover plaintiff, (6) humanitarian negligence based on defendant's alleged failure to stop, to slacken his speed, to swerve, or to give a warning, and (7) that defendant negligently turned and swerved his car so as to cause collision.

Defendant's answer consisted of certain admissions (not important here) and a general denial.

Plaintiff submitted her case solely on rear end collision negligence.

The unanimous verdict of the jury was for defendant.

Plaintiff's first assignment is in two parts, as follows:

"A. The Court refused to take judicial notice during trial and on motion for new trial of facts required to be judicially noticed, i.e., scientific facts and facts concerning the laws and forces of nature."

and

"B. The trial court in view of the evidence before it should have realized that were plaintiff to proceed on theory other than 'rear end collision' theory, such as speed, failure to look,

manner of driving under the circumstances, etc., justice would be served by a new trial."

■ "A" fails to "state what actions or rulings of the Court are claimed to be erroneous," or why "it is contended the Court was wrong in any action or ruling sought to be reviewed." It sets out only an abstract statement of law "without showing how they are (it is) related to any action or ruling of the Court." It is not a compliance with Civil Rule 83.05(e), V.A.M.R. and preserves nothing for review.

"B" is unintelligible and, of course, also violates Civil Rule 83.05(e).

However, under each assignment the case of East v. McMenamy, Mo., 266 S.W. 2d 728, is cited, giving some indication of what plaintiff had in mind. Passing on to her argument, we find that plaintiff's position is that the trial court should have given her a new trial so she could proceed on "specific" acts of negligence such as speed, failure to swerve, failure to keep a lookout, failure to have his car under control, or humanitarian negligence.

■ No similar request was made to the trial court in the motion for a new trial. We should, nevertheless, give this matter our attention because in the furtherance of justice a case should not be reversed without remanding, nor, under a defendant verdict and judgment as here, and as in East v. McMenamy, should it be affirmed, if the plaintiff "shows a state of facts which might entitle him to recover if his case were brought upon a proper theory" but instead, "in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses." Smith v. Terminal R. R. Ass'n. of St. Louis, Mo.App., 160 S. W.2d 476, 479(8, 9); East v. McMenamy, supra, 266 S.W.2d 732(7, 8).

Defendant was apparently the sole witness to the events leading up to the collision after plaintiff had stopped. He was examined by his own counsel and thoroughly cross examined by able counsel for plaintiff. All of the facts appear to have been fully developed and all available witnesses on material issues have testified—Shofler v. Jordan, Mo.App., 284 S.W.2d 612, 616(10)—and there is not the "slightest suggestion that the facts were not fully developed." Hunt v. Chicago, M., St. P. & P. R. Co., 359 Mo. 1089, 225 S.W.2d 738, 742(4).

■ Every "specific" act of negligence which plaintiff suggests as a possible avenue to a successful verdict was pleaded in her petition. At the close of the case she chose the most favorable act of specific negligence and submitted her case on the rear end collision theory. In so doing, she actually had the benefit of all of the evidence relating to the other acts of specific negligence pleaded—speed, failure to sound signal or warning, failure to have the car under control, failure to discover plaintiff, failure to stop, failure to slacken speed, and failure to swerve. Having received the benefit of presenting her evidence on all pleaded assignments to the jury and having deliberately chosen to restrict her submission to one issue because she believed it was to her advantage, "such a course is more a matter of legal strategy than of misadventure." Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 851; Hunt v. Chicago, M., St. P. & P. R. Co., supra. Under the circumstances existing here plaintiff should be held to have "abandoned all other grounds of negligence alleged in his petition." Welch v. McNeely, Mo., 269 S.W. 2d 871, 875(1); Hunt v. Chicago, M., St. P. & P. R. Co., supra.

In East v. McMenamy, supra, where plaintiff submitted her case on the only pleaded theory; humanitarian negligence, the court concluded, (266 S.W.2d 1.c. 732 (9)) "It may be that from the evidence

inferences of specific negligence may be drawn" and reversed the case so plaintiff might amend her petition and "plead specific negligence." In that case plaintiff apparently was not conscious of the possibilities of a recovery based on specific negligence. Here, plaintiff's petition indicates she was.

Litigation must end sometime. There is nothing in the record to warrant our speculating that the evidence will sustain a more successful result for plaintiff upon the submission of a different act of specific negligence and it becomes our duty to dispose of the case finally.

During the course of the trial plaintiff offered her attorney's brother as an expert on stopping distances, and he was asked:

"Q. I want you to tell me this, with the knowledge that you have personally in the braking field and in the automotive field and in these tests that you have actually taken, I want you to tell me if the weather conditions on concrete are absolutely dry and there is a 1955 DeSoto with good brakes how far upon the first application of the brake that car will travel before it stops?"

Defendant objected that it was immaterial because it related to a dry street while the evidence was that the street was icy. In sustaining the objection, the learned Trial Judge said:

"I sustain the objection, Miss Dorothy, on the ground that you are propounding to the witness a hypothetical question and those hypothetical questions must always be based on the facts that have been proven in the record. * * * Without scolding you, I would indicate this to you, too, you don't tell him whether the car before they started to stop, it was traveling a thousand miles a minute or mile a week or what it was doing, you were just going to stop it—you left out—* * * And we don't have a dry street here by agreement of everybody. You are

dealing with concrete—that wouldn't help my jury."

The question was abandoned without an offer of proof and this question asked:

"Now, Mr. Scott, assume that the concrete surface is icy, that a man is driving a 1955 DeSoto going twenty-five—no, I'm sorry, fifteen to twenty miles an hour and he applies his brakes, do you know, under those conditions how far it would take him to stop?"

Over objection of defendant, the following answer was permitted to stand:

"Well, you are driving a pretty heavy automobile, and I don't know whether I can say if—but, I can give you conditions if you are going down a hill and there is a film of ice on the automobile—I mean, on the road, the car could possibly at fifteen miles an hour, according to the grade of the hill, the car could go as far as fifty to a hundred feet; if you are going uphill, you wouldn't go so far. It's all in the traction between the tires and the street."

No other questions were asked of this witness.

■ Whether the first question was material is not a matter of concern now. It was abandoned and unanswered. No offer of proof was made. There is nothing for us to review. Keeshan v. Embassy Investment Company et al., Mo.App., 303 S.W.2d 666, 669(1, 2).

■ The answer to the second question was so indefinite that it has no probative value.

The final assignment is that the verdict and judgment are against the weight of the evidence.

■ Whether the verdict of the jury is against the weight of the evidence is for the trial court alone. Wilcox et al. v. Coons et al., 362 Mo. 381, 241 S.W.2d 907, 917 (25). The assignment "raises no question

of law which we may pursue"; and the record discloses no "complete absence of probative evidence, and no such admission (of negligence) as permits or requires our action." Robbins v. Robbins et al., Mo., 328 S.W.2d 552, 556(13). On the contrary, there was substantial evidence to support the verdict.

The judgment is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.