**DeGRENDELE MOTORS, INC., a Corporation, (Plaintiff) Appellant,**

**v.**

**Ralph REEDER, (Defendant) Respondent.**

**No. 31530.**

St. Louis Court of Appeals.
Missouri.

Sept. 25, 1964.

Rehearing Denied Oct. 26, 1964.

Richard M. Stout, Kent E. Karohl, St. Louis, for plaintiff-appellant.

Harold A. Thomas, Jr., St. Louis, for defendant-respondent.

GEORGE P. ADAMS, Special Commissioner.

Plaintiff-appellant seller, DeGrendele Motors, Inc., sued defendant-respondent buyer, Ralph Reeder, in a magistrate court of St. Louis County, Missouri, to recover

on a check given plaintiff by defendant for some repairs on a car which plaintiff sold him. The prayer of a counterclaim filed by defendant, based on breach of warranty, was in excess of the magistrate court jurisdiction and the cause was certified to the Circuit Court of St. Louis County under the provisions of Section 517.240(2) RSMo 1959, V.A.M.S.

In the Circuit Court plaintiff recovered $329.30 on the check and defendant recovered $716.00 on his counterclaim.

Plaintiff has appealed from the judgment on the counterclaim. Defendant has not appealed from the judgment on plaintiff's petition.

The evidence most favorable to defendant discloses that under date of June 15, 1957 defendant signed a "New Car Order" for the purchase of a new 1957 model Studebaker Scotsman stationwagon providing, in part, as follows:

"It is agreed that this car is purchased by me, subject to the Manufacturer's Warranty which is printed on the reverse side hereof and is a part of this order and agreed to the same as if it were printed herein above my signature; and it is the only Warranty either expressed or implied made under this order."

The "Manufacturer's Warranty" printed on the "reverse side" is, in part, as follows:

"The Manufacturer Warrants each new motor vehicle manufactured by it, to be free from defects in material and workmanship under normal use and service, their obligation under this warranty being limited to making good at their factory or authorized service station any part or parts thereof, including all equipment or trade accessories (except tires) supplied by the car manufacturer, which shall, within ninety (90) days after delivery of such vehicle to the original purchaser, or before such vehicle has been driven four thousand (4,000) miles, whichever event shall first occur, be returned to the Manufacturer with transportation charges prepaid, and which their examination shall disclose to their satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on Manufacturer's part, and they neither assume nor authorize any other person to assume for them any other liability in connection with the sale of their vehicles."

On June 21, 1957, the car was delivered to defendant.

A "Dealer Service Policy for Studebaker Owners" was in the glove compartment of the car when defendant took delivery. In this "policy" the dealer warranted "* * * each part of each Studebaker-Packard Corporation product * * *" to be free under normal use and service from defects in material and workmanship until the product had been driven, used or operated for 4,000 miles or for a 90-day period, and provided: "This Warranty is expressly in lieu of all other warranties, expressed or implied, and of all other obligations or liabilities on the part of Dealer and Studebaker-Packard Corporation."

On various dates from August 19, 1957 to March 11, 1959, with mileage readings from about 2,000 miles to 21,000 miles, defendant returned the car for servicing with complaints of defective brakes, poor engine operation, poor gas mileage, oil leaks, rattles, defective accelerator, defective float level and timing and a missing "hillholder." Because of the view we take of this case, it is not necessary to further detail these complaints or their merits.

In defendant's counterclaim as originally filed, he alleged:

"3. That at the time of said sale, as a part thereof, and to induce defendant to agree thereto, plaintiff warranted that the said automobile was a new

automobile in proper mechanical working condition; that it was manufactured by a competent, qualified manufacturer of automobiles; that it was properly manufactured and assembled by competent experienced workmen, contained mechanically proper parts and equipment, and that the said automobile and all the parts thereof were reasonably fit for the purpose and use for which such automobile was manufactured, sold, and purchased."

During the trial, over objection of plaintiff, defendant was permitted to amend this paragraph of the counterclaim to read:

"That at the time of said sale, as a part thereof, and to induce defendant to agree thereto, plaintiff impliedly warranted that the said automobile was * * * reasonably fit for the purpose and use for which such automobile was manufactured, sold, and purchased."

Plaintiff then amended its reply to the counterclaim by adding a new paragraph pleading the "Standard Warranty" on the reverse side of the "New Car Order" as an affirmative defense to defendant's claim of a breach of an implied warranty.

At the close of defendant's evidence, which was at the close of all the evidence, plaintiff's motion for a directed verdict was overruled.

The issues under the counterclaim were submitted to the jury under the theory of an implied warranty of fitness, and a verdict on the counterclaim was returned for defendant as hereinbefore stated.

After entry of judgment, plaintiff filed its Motion for new trial or for entry of Judgment in accordance with its motion for a directed verdict made at the close of Defendant's evidence. These motions were denied and plaintiff appealed.

■ By the "New Car Order" the parties entered into a contract containing an express disclaimer of any warranty other than that provided for in the "Standard Warranty" contained in said contract. Proof of, or reliance upon, an *implied* warranty of fitness was thereby precluded. Hargrove v. Lewis, Mo.App., 313 S.W.2d 594, 595 (1).

By the terms of this "order" or contract, defendant agreed that he took the car "subject to the Manufacturer's Warranty," which was made a part of the order, and that it was "the only warranty either expressed or implied made under this order."

Defendant seeks to avoid the effect of this contract on three grounds.

■ First, citing Miller v. Andy Burger Motors, Inc., Mo.App., 370 S.W.2d 654, he says that "* * * There is no evidence that attention was called to it, that it was discussed, or that it played any part in the purchase * * *," and that "* * * such document was delivered, received, and intended solely as a purchase order, no more. * * *"

Defendant testified that in order to "obtain" the car he had to sign the order; that he did sign it; and that the car was delivered to him. By the order that he admitted signing he "agreed" that the car was "purchased" by him subject to the Manufacturer's Warranty and that it was "the only warranty" made under the order. Certainly the order played a very essential part in the purchase of the car—the very foundation of the whole transaction.

The facts in this case are quite different from those in Andy Burger Motors. There the "sale and purchase" had been agreed to and two days later the seller delivered to the buyer an "Authorized Ford Dealer's 1957 Ford Vehicle Service Policy" which contained a "parts warranty" and a disclaimer of other warranties. An inspection of the files in that case discloses that this document was not signed by the buyer, nor did it purport to be an "agreement" on the part of the buyer.

The "New Car Order" in this case is very similar to the instrument in Hargrove v. Lewis, supra, 313 S.W.2d at page 595. The buyer had signed a contract in which it was stated: "It is understood that the Allis-Chalmers machinery is sold by the Dealer (defendants) with the standard warranty of the Manufacturer, set forth in full on the reverse side hereof. *This warranty is the only warranty either express, implied, or statutory, upon which said machinery is sold.*" The warranty printed on the "reverse" side of this contract was a warranty to repair or replace defective material and was followed by another statement that "this warranty to repair is the only warranty either express, implied, or statutory, upon which said machinery is sold."

Affirming the Trial Court's action in setting aside a judgment for the buyer against the seller in accordance with the seller's motion for a directed verdict, the Springfield Court of Appeals said, 313 S.W.2d 1. c. 595 (1):

"In setting aside the judgment obtained by plaintiff on that theory and in entering judgment for defendant, the trial court followed a long line of Missouri cases holding that, where the parties to a sale have entered into a written contract, complete on its face, and there is no fraud, accident or mistake, an express contractual disclaimer of any warranty other than those specifically provided in the written contract precludes proof of, or reliance upon, an implied warranty of fitness." (Citing cases.)

■ In defendant's second effort to avoid the effect of this contract he says: "The evidence in fact shows that the documents relied on by Appellant (new car order and dealer's service policy) both stated on their face that they were void and invalid unless signed by DeGrendele, and that DeGrendele never signed either one!" This is a little inaccurate in that the "new car order" provided that " * * * This order is not valid unless *accepted* by an officer of this Company * * *." (Emphasis supplied.) The order was "accepted" by the company by the delivery of the car and its receipt of the purchase price.

The "New Car Order" was very simply an offer by defendant to purchase the car for a certain price, to be paid in a specified manner (car trade-in and cash) under certain terms (stated therein), including the expressed and exclusive warranty. Plaintiff accepted the offer and an executed contract came into being by which plaintiff and defendant were bound—buyer to pay purchase price and seller, in performance of its warranty that the car was "free from defects in material and workmanship under normal use and service," to make "good at their factory or authorized service station any part or parts" which should within the period of the warranty prove defective.

■ Finally, defendant says, " * * * the Court should note that the latest decisions hold that public policy prohibits the seller from avoiding the implied warranty imposed by law by using the express warranty 'disclaimer' device," and cites State Farm Mutual v. Anderson-Weber, Inc., Iowa Supreme Court, 252 Iowa 1289, 110 N.W.2d 449. The fact that the State of Iowa has a statute covering the subject is sufficient to distinguish that case from this. But even more important, such a ruling is directly in conflict with the holdings in Hargrove v. Lewis, supra, and the cases cited on page 595 of that opinion.

In Nemeth v. Becker Roofing Co., Mo.App., 151 S.W.2d 559, 563–564(2, 3) cited in Hargrove, this Court, in passing on the Illinois law holding that disclaimer of warranties included those implied by law, said that such a doctrine " * * * does not conflict with the public policy of this state * * *" and that if " * * * the parties so desire to contract, we see no objection in law to their doing so."

What we have said is in response to the issues arising from the specific facts pre-

sented here, where plaintiff seeks to recover damages for the difference between the actual value of the car and the value "as warranted." These issues do not involve products "which have caused injury to persons and property by reason of defects in construction or assemblage, which rendered such products imminently dangerous when used for the purpose for which they were manufactured and sold," the subject of a number of cases extending the exception to the rule requiring privity with the warrantor. Morrow v. Caloric Appliance Corporation, Mo., 372 S.W.2d 41, 53; Worley v. Procter & Gamble Mfg. Co., 241 Mo.App., 1114, 253 S.W.2d 532; Smith v. Ford Motor Company, Mo.App., 327 S.W.2d 535, 538, (distinguishing a suit for damages for replacements and repairs to a car from one where "there has been an injury and an element of tort present.")

Whether a "disclaimer" of any implied warranty should or should not be recognized in such personal injury or property damage cases is not within the scope of this opinion. An answer to these issues must await a case directly involving them.

In the meantime, as an aid in forecasting this answer, reference should be made to the new Uniform Commercial Code, V.A.M.S., Section 400.1–101, effective July 1, 1965, which has some provisions that might be relevant to the subject Sections 400.2–313 through 400.2–318.

The trial court erred in failing to sustain plaintiff's said motion for a directed verdict on defendant's counterclaim, and the cause should be either reversed and remanded, or reversed outright.

At the time defendant was permitted to amend his counterclaim he stated that he desired to do so in order " * * * to make it perfectly clear that the counter-claim is based solely on an implied warranty that the car was reasonably fit for the purpose intended, and that the counter-claim is not based on any allegations of breach of an express warranty. * * *"

He was, therefore, well aware of his right to proceed on the theory of the breach of an express warranty, but he chose what appeared to him to be the more favorable and broader theory of the breach of an implied warranty. This he did deliberately and consciously. His action was "more a matter of legal strategy than of misadventure." Borrson v. Missouri-Kansas-Texas R. Co., 351 Mo. 229, 172 S.W.2d 835, 851; Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 435 (10); Heginbotham v. Gann, Mo.App., 365 S.W.2d 56, 58 (3). It was a calculated course that defendant chose after he " * * * weighed the consequences and committed himself to a particular theory * * *" (Borrson, supra, 172 S.W.2d page 850), and he "abandoned" other grounds of liability (Welch v. McNeely, Mo., 269 S.W.2d 871, 875 (1)). A party "should not always be granted a remanding of a cause for successive trials in order that he may experiment with different theories of his adversary's liability. The latter has some rights." (Borrson, supra, 172 S.W.2d page 850).

Apparently all competent evidence has been presented and there is no suggestion of fraud, accident, or mistake justifying the setting aside of the disclaimer and, therefore, an exercise of our discretionary power to remand the cause would unnecessarily prolong this litigation.

Other complaints of error asserted by appellant need not be considered further in view of our holding herein.

This cause should be reversed, with directions to the Trial Court to enter judgment for plaintiff on defendant's counter-claim in accordance with plaintiff's motion for a directed verdict at the close of all the evidence, and the Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by ADAMS, Special Commissioner, is adopted as the opinion of the Court.

The cause is reversed with directions to the Trial Court to enter judgment for plaintiff on defendant's counterclaim in accordance with plaintiff's motion for a directed verdict at the close of all the evidence.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.